SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

THOMAS MOORE (ASB 4305-T78O)
KIRSTIN M. AULT  (CABN 206052)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, CA 94102
   Telephone: (415) 436-6935, 7151
   Facsimile: (415) 436-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR 03-40210 SBA |
| Plaintiff, | |
| v. | **UNITED STATES' OPPOSITION TO DEFENDANT KAHN'S MOTION FOR RECONSIDERATION OF MOTION TO SEVER** |
| MOHAMMAD YOUSUF CHAUDHRY, and ALI H. KHAN, | Pretrial: September 11, 2006<br>Trial Date: September 24, 2006<br>Time: 8:30 a.m. |
| Defendants. | Court: Courtroom No. 3<br>Hon. S. Brown Armstrong |

Defendant Kahn has submitted a Motion for Reconsideration of his Motion to Sever. However, the defendant presents no new law in support of his motion, and cites only one additional "fact" that he contends requires reconsideration. The defendant asserts that his motion should be reconsidered because of the United States' notice of its intent to introduce certain evidence that arguably may be considered admissible pursuant to Federal Rule of Evidence 404(b)[1]. The defendant contends that this evidence is relevant only to the crimes charged against

---

[1]  As stated in the United States' Opposition to the Defendants' Motions in Limine, which will be filed separately, the United States believes that this evidence should be admitted as inextricably intertwined with the charged conduct and only in the alternative should the evidence be considered under Rule 404(b). The United States provided the notice required by Rule 404(b) in an abundance of caution.

defendant Chaudhry. However, as stated in the United States' August 12, 2006 letter, which is attached as Exhibit A to the defendant's motion, the United States believes that this evidence pertains to *both* defendants charged in the indictment. The evidence proves the defendants' motive for the conspiracy and structuring counts with which they are both charged and is inextricably intertwined with the charged conduct in that it forms part of the same course of conduct and is necessary to explain the context in which the defendants' crimes occurred.

This "new" fact cited by the defendant is not "new" at all, but is simply the United States providing notice to the defendant of its intent to introduce at trial certain evidence that had already been produce to the defendants in discovery. This notice does not provide grounds for the Court to reconsider its previous ruling. The majority of the evidence that will be introduced at trial will relate to a scheme perpetrated by both defendants to structure transactions in order to evade financial reporting requirements so that defendant Chaudhry could avoid having to report the income from the structured transactions on the tax returns for his corporations RT Computers and Alternative Energy Systems. The structure of that scheme, as well as the motivations behind it, are relevant to the charges pending against both defendants. Therefore, defendant Kahn is not in a situation where the vast majority of the evidence introduced at trial will have nothing to do with the crimes he is charged with committing.

The United States' previous response to the defendant's motion responds to each point raised in his Motion for Reconsideration. The United States is attaching a copy of that response as Exhibit A for the Court's reference. For the reasons cited therein, the defendant's motion for severance is meritless and should be denied.

DATED: 08/23/07                              Respectfully Submitted,

                                             SCOTT N. SCHOOLS
                                             United States Attorney


                                             _____/s/_____
                                             THOMAS MOORE
                                             KIRSTIN M. AULT
                                             Assistant United States Attorneys

2

# EXHIBIT A

Case 3:03-cr-40210-WDB    Document 109    Filed 08/23/2007    Page 3 of 15

KEVIN V. RYAN (CSBN 118321)
United States Attorney

EUMI L. CHOI (WVBN 0722)
Acting Chief, Criminal Division

W. DOUGLAS SPRAGUE (CSBN 202121)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, California 94612
   Telephone: (510) 637-3699

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-03-40210-SBA |
|    Plaintiff, | GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT CHAUDHRY'S MOTION TO SUPPRESS AND DEFENDANT KHAN'S MOTION TO SEVER |
|    v. | |
| MOHAMMAD YOUSUF CHAUDHRY, and ALI KHAN, | DATE: November 30, 2004<br>TIME: 11:00 a.m. |
|    Defendants. | Honorable Saundra B. Armstrong |

## Introduction

Defendants Mohammad Chaudhry and Ali Khan each have filed one motion. Chaudhry asks the Court to suppress evidence; the government submits that Chaudhry's motion is moot, because the government hereby represents it will not use in its case-in-chief against Chaudhry any of the evidence seized at the April 19 search of Chaudhry's businesses.

Defendant Khan, however, asks this Court for a truly extraordinary remedy: to try a conspiracy case twice, once for each co-defendant by himself. As discussed below, Khan's motion is without legal or factual merit, and it should be denied.

//

**Factual Background**

In summary, the government anticipates that the evidence will show the following:

During the relevant period of about 1999 through 2001, Chaudhry was the President of RT Computers ("RT") and Alternative Energy Systems ("AES"). Customers will testify that they purchased computer software products from RT and AES during this time period; invoices confirm these purchases. These customers usually wrote checks to purchase these products. Records show that RT and AES received approximately $7.1 million in gross receipts during this period. As President, Chaudhry signed five corporate tax returns during those years, three for RT and two for AES. On those tax returns, Chaudhry represented that RT's and AES' gross receipts were only about $2 million, despite records that show the gross receipts were approximately $7.1 million. This is the basis for counts one through five of the Indictment.

The basis for counts six through seventeen of the Indictment is that, during this same time period, Chaudhry and Khan structured approximately $2 million worth of payments to RT and AES to avoid reporting requirements. To accomplish this structuring, Chaudhry asked customers to break up payments into multiple checks, each less than $10,000, the limit at which certain reporting obligations are triggered. For example, instead of a customer paying $36,000 to RT or AES via a single check, Chaudhry would instruct that customer to pay with 4 checks each in the amount of $9,000.

Co-defendant Khan was involved in Chaudhry's businesses and participated in the structuring activities. For example, Khan negotiated/cashed approximately 160 of these structured checks worth hundreds of thousands of dollars. Furthermore, on several occasions when Khan negotiated/cashed these checks, he did not endorse the checks with his true name; rather, he tried to conceal his involvement in the scheme by signing the name of another employee, signing illegibly, or signing just a fragment of his name. In addition to having these payments broken up into checks of less than $10,000, Chaudhry and Khan did not cash or deposit these checks at, for example, a bank. Instead, they went to a convenience store, where they had to pay a fee of approximately 2.5% every time they cashed a check.

The structuring activities, of course, are directly related to (indeed, they overlap with) the

tax counts against Chaudhry. The structured payments make up a substantial portion of the gross receipts that Chaudhry failed to report on his corporate tax returns. Thus, the tax counts and the structuring counts are inextricably intertwined and, even if they were not so intertwined, each would be admissible evidence of the other under Rule 404(b). Neither these counts nor these defendants should be severed.

## **ARGUMENT**

### I. Chaudhry's Motion to Suppress Evidence from the April 2002 Search is Moot

Defendant Chaudhry moves to suppress evidence seized from his businesses during a search on or about April 19, 2002. The government will not offer any of this evidence in its case-in-chief against defendant Chaudhry. The government, however, reserves the right to use this evidence against defendant Khan or against either defendant for impeachment purposes.

### II.     Defendants Charged in a Conspiracy are Not Misjoined

Defendant Khan first argues that he is misjoined with defendant Chaudhry in the Indictment. Defendant's real argument, however, is that he will be prejudiced by being tried together with defendant Chaudhry; this, of course, is an argument under Rule 14 (which is addressed in the next section of both Khan's motion and this response), not Rule 8(b).

Rule 8(b) provides the standard for joining two or more defendants in the same indictment:

> Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be in each count.

F.R.Cr.P. 8(b). "The term 'transaction' is interpreted flexibly, and whether a 'series' exists depends on whether there is a 'logical relationship' between the transactions." United States v. Vasquez-Velasco, 15 F.3d 833, 843 (9th Cir. 1994)(citations omitted). A "logical relationship" is shown by the existence of a common plan, scheme, or conspiracy. Id. at 844. The Ninth Circuit has repeatedly stated that "Rule 8(b) should be construed broadly in favor of joinder." Id. Generally, defendants who are charged together should be tried together. United States v. Buena-Lopez, 987 F.2d 657, 660 (9th Cir. 1993)(citation omitted). This is also the rule in

3

conspiracy cases. Id. (citation omitted). Joint trials promote efficiency and "'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" Id. (citations omitted).

Furthermore, charging a conspiracy count linking together substantive counts against defendants satisfies Rule 8(b) unless the conspiracy count is alleged in bad faith merely to sidestep the requirements of that rule. See United States v. Valenzuela, 596 F.2d 824, 829 (9th Cir. 1979). Indeed, the Ninth Circuit has repeatedly held that a conspiracy count, as long as it is charged in good faith, may provide the necessary link to satisfy the requirements of Rule 8(b). United States v. Donaway, 447 F.2d 940, 943 (9th Cir. 1971); United States v. Adams, 581 F.2d 193, 197 (9th Cir. 1978); United States v. Cowley, 720 F.2d 1037 (9th Cir. 1983)(after court ruled defendants misjoined, government added conspiracy count thus rendering joinder proper, even though conspiracy count later dismissed). Even if a conspiracy count alone is not adequate, the combination of the conspiracy and joint offenses involved in the substantive counts may be sufficient. United States v. Rogers, 722 F.2d 557, 561 (9th Cir. 1983).

Defendant Khan provides no legal or factual support for the extraordinary remedy he seeks of severing one of two defendants charged in a conspiracy. Although he couches his argument in terms of Rule 8(b), defendant Khan's real complaint is that he will be prejudiced by being tried in the same trial as defendant Chaudhry's tax counts. This is not a proper argument under Rule 8(b), it is just more of the same argument defendant Khan makes under the heading of Rule 14. In any event, in Count Six defendants are charged with conspiring to structure financial transactions to evade a reporting requirement. Of the 33 overt acts alleged to have been undertaken in furtherance of that conspiracy, *all* of them were committed by defendant Khan. Defendant Khan may claim he was a clerk or low-level office employee who did what he was told (by Chaudhry), but in the course of only about 14 months he received and cashed more than 160 checks from Chaudhry worth hundreds of thousands of dollars. When defendant Khan cashed them, he signed a false name, an incomplete name, or an illegible name; this concealment was in stark contrast to his proper name, legibly signed, when he endorsed his paychecks.

In addition, Chaudhry and Khan are charged together in seven substantive counts of structuring. The conspiracy and the substantive counts are based upon the same acts,

4

transactions, and series of transactions constituting the alleged offenses. Joinder of these charges falls squarely within the language of Rule 8(b) as well as the cases interpreting it.[1]

Finally, the tax counts that sound only against Chaudhry bear a "logical relationship" to the structuring counts. Chaudhry intentionally failed to report on his corporate tax returns more than $5.3 million dollars of gross receipts, approximately $2 million of which allegedly was structured by Chaudhry (counts 6-9 and 17) or Chaudhry and Khan (counts 6 and 10-16). For example, the government anticipates that witnesses will testify that they paid Chaudhry by check for products; the government will show that Chaudhry did not report those checks as gross receipts, and that Chaudhry, Khan, or both then structured those checks to avoid reporting requirements. Thus, the "logical relationship" between the tax counts and the structuring counts is plain, and that is more than enough to satisfy Rule 8(b), even if no conspiracy were alleged. See, e.g., United States v. Davis, 663 F.2d 824 (9th Cir. 1981)(tax charges properly joined with narcotics charges, as the former arose out of failing to report income related to the latter); United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976)(affirming refusal to sever tax counts from securities counts, in part because "any possible prejudice could have been cured by a request for a cautionary instruction...").

**III. Defendant Khan is Not Prejudiced by This Proper Joinder**

Defendant Khan's main argument is that he will be unfairly prejudiced by having to sit through trial regarding the tax counts that only sound against Chaudhry. In support of this argument, defendant Khan claims that there is too much risk that jurors may impute Chaudhry's guilt regarding the tax counts to Khan's guilt regarding the structuring counts. In fact, defendant Khan wrongly claims that it would be "impossible" for jurors not to impute Chaudhry's crimes

---

[1] The two cases defendant cites provide little support for his motion. In United States v. Satterfield, 548 F.2d 1341 (9th Cir. 1977), the government tried two defendants together despite the fact that one was charged with five counts of bank robbery, only two of which the other defendant was allegedly involved in. The court held that was prejudicial because the evidence against the defendant charged with three robberies was much stronger than the evidence against the defendant who had only been charged in two of the robberies. Even the only other case defendant Khan cites, United States v. Sarkisian, 197 F.3d 966 (9th Cir. 1999), not only distinguished Satterfield, but found that the defendants were *not* prejudiced by the district court refusing to sever counts for trial. Id. at 978.

5

to Khan "by association."  Particularly in this case involving only two defendants each charged with easily compartmentalized crimes, this all too common defense argument assumes jurors are nitwits.

Rule 14 provides as follows:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

F.R.Cr.P. 14.

"Rule 14 sets a high standard for a showing of prejudice." United States v. Vasquez-Velasco, 15 F.3d 833, 845 (9th Cir. 1994).  As the Supreme Court has explained, the relevant inquiry in determining whether a joint trial would cause sufficient prejudice to warrant a severance is whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 113 S. Ct. 933, 938 (1993).  The Court noted that the risk of prejudice will vary with the facts of each case, and that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Id.

In assessing prejudice, the primary concern is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to each defendant and to follow the court's instructions. United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir. 1992)(affirming refusal to sever where jury instructed regarding admissibility of evidence and defendants failed to show jury's inability to compartmentalize evidence); United States v. Rasheed, 663 F.2d 843, 854-55 (9th Cir. 1981)(upholding refusal to sever even though evidence against codefendant much stronger; judge gave cautionary instructions to jury and defendants failed to indicate how jury would be unable to compartmentalize evidence); United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir. 1987)("defendants provide no explanation as to why the jurors could not fairly 'compartmentalize' the conspiracy and tax evasion charges in their deliberations.").

The case upon which defendant Khan relies is plainly inapplicable here.  In United States v. Donaway, 447 F.2d 940 (9th Cir. 1971), Donaway was charged with eight other defendants.

1 Id. at 941. The conspiracy count in that case was dismissed as to Donaway, whose only
2 connection to the charged conspiracy was placing one bet on one horse in connection with a
3 wide-reaching conspiracy involving fixed horse races. Id. The government's case-in-chief
4 covered more than 2,300 pages of transcript; less than 50 pages (or roughly 2% of the transcript
5 pages) were relevant to Donaway. Id at 943. Most of the remaining pages involved the other
6 defendants and charges of handling and doping horses, with which Donaway had no connection.
7 Id. The trial judge was temporarily disabled, resulting in that judge being replaced "by another
8 to whom the dangers of joinder might not have been apparent." Id.

     Donaway bears no resemblance to this case. Here there are two defendants, not nine. The conspiracy charge is pending. In addition to the conspiracy charge, defendant Khan is charged with defendant Chaudhry in seven substantive counts. Defendant Khan's connection to the charged conspiracy is set forth in more than 30 overt acts and took place over approximately 14 months, which is in stark contrast to Donaway's one bet on one horse in the midst of a wide-ranging race-fixing and horse-doping conspiracy. In this case, the government's case-in-chief will not come near occupying 2,300 pages of transcript, and the portions of the transcript relevant to defendant Khan will far exceed the 2% of pages relevant to Donaway.

     Furthermore, as mentioned above, the tax counts against Chaudhry are inextricably intertwined with the structuring charges against both defendants. Chaudhry failed to report a substantial portion of the income derived from the checks that defendants conspired to structure and did structure to avoid reporting requirements. Accordingly, evidence of the structuring activities would be admissible against Chaudhry at a trial of only the tax counts, and evidence of the tax charges would be admissible against Chaudhry at a trial of only the structuring charges. "Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the [other] act and the evidence concerning the crime charged are inextricably intertwined.'" United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) (internal citation omitted); see also United States v. Sayakhom, 186 F.3d 928, 937-38, as amended by 197 F.3d 959 (9th Cir. 1999); United States v. King, 200 F.3d 1207, 1215 (9th Cir. 1999) (testimony in mail fraud case about "general nature of King's business activity" that placed charged conduct in "context" constituted "direct

7

evidence, inextricably intertwined with evidence of the crime charged"); United States v. Mundi, 892 F.2d 817, 819 (9th Cir. 1989).[2]

In essence, what defendant Khan requests is that this Court preside over two trials of counts six through seventeen: one for Chaudhry, and one for Khan. What defendant Khan requests is that the Court take the drastic measure of separating the trial of a conspiracy charge involving only two defendants. In support of this extraordinary request for drastic relief, defendant Khan merely states that jurors are incapable of keeping tax counts against Chaudhry separate from structuring counts against Khan. Defendant Khan provides no support for that belief, either rooted in applicable case law or in the facts of this case. Jurors are smarter than that; they will be able to understand who is charged with what, and they will be able to follow the Court's instructions and defendant Khan's arguments in which he will remind the jurors of what crimes he is not charged with and what related evidence does not bear upon his guilt. Defendant Khan's request to sever himself from his only co-conspirator and only co-actor in the charged series of transactions should be denied.

**IV.     There is No Bruton Issue Here, and Certainly Not One Requiring Severance**

Defendant Khan next identifies one statement Chaudhry made and claims that admitting that statement would violate Khan's right to confront Chaudhry at trial. In making this argument, Khan misinterprets both the statement at issue and, more importantly, Bruton v. United States, 391 U.S. 123, 135-36 (1968), and its progeny.

   A.  The Policy Concerns Underlying Bruton are Not Present Here

In Bruton, the Supreme Court held that the introduction of a nontestifying co-defendant's confession violates a defendant's Sixth Amendment right of confrontation, even if the jury is instructed that it is admissible only against the nontestifying co-defendant. Bruton, 391 U.S. 123, 135-36 (1968). Bruton and subsequent Supreme Court cases applying the doctrine involved post-arrest statements. The Confrontation Clause concerns inherent in post-arrest confessions to law enforcement which incriminate another defendant cannot be readily ameliorated through jury

---

[2] Even if these crimes were not inextricably intertwined, evidence of the structuring would be admissible in a trial of the tax charges (and vice versa) under Rule 404(b).

1  instructions because, while such statements are "powerfully incriminating extrajudicial
2  statements" that can be "devastating" to the implicated defendant, "their credibility is inevitably
3  suspect" since the confessing co-defendant in such circumstances has "a recognized motivation
4  to shift blame onto others." Bruton, 391 U.S. at 136.  The critical issue of the declarant's
5  credibility and motivation cannot be explored where the declarant does not take the stand.

6   In contrast, statements made outside the context of a confession to law enforcement are
7  not "inevitably suspect," since such statements are not colored by the declarant's motive to
8  falsely shift blame onto others.

9   Here, Chaudhry's statement was not made in the course of a confession or under
10 circumstances which would suggest that Chaudhry had a motive to shift blame to anyone,
11 including Khan.

12   B.  The Statement Does Not Facially Incriminate Defendant Khan

13   Even if the reasoning in Bruton were extended to statements made under the
14 circumstances in which the statement in this case was made, the statement is not the sort of
15 statement that supports a severance.

16   In Richardson v. Marsh, 481 U.S. 200 (1987), the Supreme Court limited the application
17 of Bruton to confessions that are "facially incriminating." Marsh, 481 U.S. at 209.  "[T]he
18 calculus changes  when confessions that do not name the defendant are at issue." Id. at 211. See
19 also Gray v. Maryland, 523 U.S. 185, 195 (1998)("Richardson placed outside the scope of
20 Bruton's rule those statements that incriminate inferentially"); United States v. Olano, 62 F.3d
21 1180, 1195 (9th Cir. 1995); United States v. Hoac, 990 F.2d 1099, 1105 (9th Cir. 1993); United
22 States v. Sherlock, 865 F.2d 1069, 1079 (9th Cir. 1989).  A statement which incriminates a
23 defendant inferentially, or which requires linkage with other evidence to become incriminatory,
24 is not the sort of "powerfully incriminating" statement that cannot be adequately addressed
25 through a jury instruction. Marsh, 481 at 208-11.
26   The statement at issue here does not facially incriminate defendant Khan in the offenses
27 charged in this case.  The statement is not even facially incriminating as to Chaudhry, who
28 merely says that he cashed checks and gave the money to "Sheila" – he does not say he failed to

9

report those receipts (or even that he should have) or that he structured these transactions to avoid reporting requirements. Absent a facially incriminating statement, no severance is warranted or required.

C.      The Government Will Redact Any Statements Offered to Satisfy Any
         Confrontation Clause Concerns

Consistent with Bruton and its progeny, the government will redact any statements offered in evidence that were made by one defendant which directly refer to the other defendant and which could be construed to implicate the other defendant, even in such an attenuated way.

The statement at issue, however, does not fall under the prohibitions of Bruton and does not facially implicate defendant Khan. Reading the statement leaves open the possibility that when defendant Chaudhry used the pronoun "we", he was using it to include either his wife (to whom he was speaking), "Sheila" (likely Sheila Wu, who the government anticipates will testify at trial), or one or more unknown others. Defendant Khan, of course, likely would argue at trial that "we" did not include him, and apparently he only states otherwise now because he seeks a severance.

Even if the statement referred to defendant Khan, this statement (the only statement about which defendant Khan complains) can be easily redacted (if the government even chooses to offer the statement) to eliminate any reference to defendant Khan by, for example, simply including only the portions found on page 14, lines 2-22, of defendant Khan's brief. Alternatively, the three references to "we" can be replaced with "I" (along with a corresponding change in verb conjugation). The transcript need not have "blanks" that defendant Khan claims will be filled in by the jury with his name. Simply put, the transcript can be prepared to eliminate any possible Confrontation Clause claim. Accordingly, no severance is warranted or required.

D.      If the Court is Not Satisfied that Any Confrontation Clause Issues Have Not Been
         Satisfied, the Government Will Not Offer the Statement(s)

Finally, rather than the drastic remedy of severing the only two co-conspirators in this case, the government simply will not offer any statement(s) that the government otherwise would seek to offer in evidence that cannot be redacted to the Court's satisfaction to avoid

10

Confrontation Clause issues.

**V.      This Trial Should Not Be Severed Based Upon Hypothetical Possibilities**

Finally, defendant Khan urges the Court to sever the defendants because, according to Khan's attorney, defendant Chaudhry is "likely" to offer exculpatory testimony for Khan, and Khan "expects" to file an affidavit outlining what this testimony would be. (Khan's Mot., p. 17.)

The Court should not sever a trial based upon a hypothetical possibility. "When the reason for severance is the asserted need for a codefendant's testimony, the defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving defendant." United States v. Vigil, 561 F.2d 1316, 1317 (9th Cir. 1977). In Vigil, in an affidavit filed with his motion to sever, the moving defendant's attorney filed an affidavit in which he swore he intended to call the codefendant at trial and that he had learned from that codefendant's attorney that the other defendant would testify that the moving defendant had no interest in the drugs or knowledge of their presence. Id. That attorney also represented that the other defendant would be willing to testify at a severed trial. Id. The Ninth Circuit held that because the non-moving defendant did not seriously dispute the drugs were his, claimed he had the drugs only for his own use, and may have testified at trial for the moving defendant that the moving defendant had no knowledge of or interest in the drugs, the trials should have been severed. Id.

The other case defendant Khan cites, United States v. Seifert, 648 F.2d 557 (9th Cir. 1980), is similarly distinguishable. There, a detailed offer of proof was made regarding the non-moving defendant's testimony, and this detailed offer of proof was supported by an affidavit from the non-moving defendant. Id at 563.

Here, defendant Khan acknowledges his burden of establishing that he would call defendant Chaudhry at trial, that Chaudhry would testify, and that that testimony would be sufficiently favorable to defendant Khan. But defendant Khan makes no effort to satisfy any of those three requirements. The only purported support for his motion is that Chaudhry is the "only" person who could testify "as to Mr. Khan's minor administrative duties in the office." (Khan Mot., p. 18.) Not so. Khan can testify about his duties. So can others who had contact

11

with Khan and Chaudhry.  Even if Chaudhry were the only person who could testify about Khan's duties, his duties are largely irrelevant.  What is relevant is that he cashed approximately one hundred and sixty checks worth hundreds of thousands of dollars, often signing those checks in a false or illegible name.  How Chaudhry could exculpate Khan for that conduct is a mystery, and Khan's motion does nothing to solve it.  Khan's hypothetical unsupported scenario is no basis for severance.

## **CONCLUSION**

For these reasons, the government respectfully requests that the Court deny defendant Chaudhry's motion to suppress as moot and deny defendant Khan's motion for a severance from his only co-conspirator.

DATED:      November 8, 2004                     Respectfully submitted,

                                                 KEVIN V. RYAN
                                                 United States Attorney


                                                 By_____/s/_____
                                                 W. DOUGLAS SPRAGUE
                                                 Assistant United States Attorney

12