SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney
BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division
KIRSTIN M. AULT  (CABN 206052)
THOMAS MOORE (ASB 4305-O78T)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, CA 94102
   Telephone: (415) 436-7151, 6935
   Facsimile: (415) 436-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  CR 03-40210 SBA |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOHAMMAD YOUSUF CHAUDHRY, and | ) | Pretrial:     September 11, 2007 |
| ALI H. KHAN, | ) | Trial Date:  September 24, 2007 |
| | ) | Time:       8:30 a.m. |
|     Defendants. | ) | Court:     Courtroom No. 3 |
| | ) | Hon. S. Brown Armstrong |

**UNITED STATES' OPPOSITION TO
DEFENDANTS' MOTIONS IN LIMINE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**PAGE**

BACKGROUND ................................................................. 1

ARGUMENT .................................................................. 3

    A.    Evidence Regarding Tax Returns in Years Outside of the Indictment Period Is Relevant to Proving the Defendant's Knowing and Willful Failure to Report Income During the Years Charged in the Indictment ...................... 3

    B.    Evidence Regarding Revenue Agent Janet Appleton's Audit of Defendant Chaudhry's Tax Returns is Relevant to His Knowing and Willful Failure to Report Income During the Years Charged in the Indictment ................ 3

    C.    Evidence Regarding Revenue Agent Appleton's Belief that the Defendants Were Involved in a Computer Theft Ring is Relevant to Explaining the Actions Taken by Appleton During Her Audit. ........................................... 5

    D.    Evidence Regarding Defendant Chaudhry's Contribution to Pakistani Charitable and Political Causes Will Not Be Introduced Unless the Defendants Open the Door. ....................................................................... 5

    E.    Evidence That is Inextricably Intertwined With the Conduct Charged in the Indictment Should Be Admitted Under Federal Rules of Evidence 401 and 402 or, Alternatively, under Rule 404(b ................................... 5

        1.    Legal Background .................................................. 5

            a.    Evidence of the acts constituting the same course of conduct or conspiracy are admissible under Rules 401 and 402. .......... 5

            b.    Evidence of background, context ........................ 7

        2.    Each piece of evidence cited by the defense is admissible under Rules 401, 402, 403 and 404(b). ............................... 8

            a.    Evidence of trade in illegal software. ..................... 8

                i.    inextricably intertwined ......................... 8

                ii.    Rule 404(b) .................................... 10

            b.    Evidence of the amount of defendant Chaudhry's tax deficiency. ................................................. 12

                i.    inextricably intertwined ......................... 12

                ii.    Rule 404(b) .................................... 12

                iii.    Rule 403 ....................................... 12

i

c.    Evidence of checks other than those charged in the indictment  . 13

    i.      inextricably intertwined . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    ii.     Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    iii.    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

d.    Evidence of Clarence Walker's compliance review  . . . . . . . . . . 14

e.    Payments from RT and AES customers other than those charged in the indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    i.      inextricably intertwined . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    ii.     Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    iii.    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

f.    Evidence of activity in defendant Chaudhry's bank accounts.  . . 15

    i.      inextricably intertwined . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    ii.     Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    iii.    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

g.    Evidence of defendant Chaudhry's participation in preparing CTR's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    i.      inextricably intertwined . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    ii.     Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    iii.    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

h.    Evidence of Relationship between defendant Chaudhry and Sheila  Wu and Radu Tomescu.  . . . . . . . . . . . . . . . . . . . . . . . . . 18

    i.      inextricably intertwined . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    ii.     Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    iii.    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    iv.     cumulativeness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i.    Evidence of the defendants' dealings with check cashers other than those pertaining to transactions charged in the indictment  . . . . . 19

    i      inextricably intertwined . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    ii.     Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    iii.    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F.      Testimony That Is Relevant and Based on Witness' Personal
        Knowledge Should Not Be Excluded. . . . . . . . . . . . . . . . . . . . . . . . . 20

G.      The Summary and Expert Testimony of Charles Tonna is Relevant and
        Appropriate in This Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

H.      The Summary and Expert Testimony of Richard Adams is Relevant and
        Appropriate in This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.      Impeachment Material Has and Will Be Disclosed . . . . . . . . . . . . . . . 23

J.      Jenks Act Disclosures Have Been and Will Continue to Be Made . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF POINTS AND AUTHORITIES

<u>CASES</u>                                                                                                    <u>PAGE</u>

Barsky v. United States,
    339 F.2d 180 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cheek v. United States,
    498 U.S. 192 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

City of Phoenix v. Com/Systems, Inc.,
    706 F.2d 1033 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Gariepy v. United States,
    189 F.2d 459 (6th Cir. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hendricks v. Calderon,
    70 F.3d 1032 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sherwin v. United States,
    320 F.2d 137 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Ayers,
    924 F.2d 1468 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Bailleaux,
    685 F.2d 1105 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Baker,
    10 F.3d 1374 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Beckman,
    298 F.3d 788 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 10, 11

United States v. Buchannan,
    633 F.2d 423 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Buras,
    633 F.2d 1356 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Claiborne,
    765 F.2d 784 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Conforte,
    624 F.2d 869 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. DeSalvo,
    41 F.3d 505 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Diggs,
    649 F.2d 731 (9th Cir. 1981), *overruled on other grounds* . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Esser,
    520 F.2d 213 (7th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Farris,
    517 F.2d 226 (7th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

iv

United States v. Greene,
        698 F.2d 1364 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Holovachka,
        314 F.2d 345 (7th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Ives,
        609 F.2d 930 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Jackson,
        84 F.3d 1154 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Johnson,
        594 F.2d 1253 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

United States v. Kallin,
        50 F.3d 689 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Kelley,
        539 F.2d 1199 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Kim,
        884 F.2d 189 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. King,
        200 F.3d 1207 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 18

United States v. Marabelles,
        724 F.2d 1374 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Marchini,
        797 F.2d 759 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. McCollum,
        802 F.2d 344 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. McConney,
        728 F.2d 1195 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Meyers,
        847 F.2d 1408 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Montgomery,
        384 F.3d 1050 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 20

United States v. Moore,
        997 F.2d 55 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Mundi,
        892 F.2d 817 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 20

United States v. Murillo,
        255 F.3d 1169 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

United States v. Pineda-Torres,
        287 F.3d 860 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Pistante,
    453 F.2d 412 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Pomponio,
    429 U.S. 10 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Ramirez-Jiminez,
    967 F.2d 1321 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 17, 18

United States v. Rrapi,
    175 F.3d 742 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Sayakhom,
    186 F.3d 928 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

United States v. Serang,
    156 F.3d 910 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 20

United States v. Smith,
    890 F.2d 711 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Snow,
    529 F.2d 224 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Turk,
    722 F.2d 1439 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Vaandering,
    50 F.3d 696 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

United States v. Voorhies,
    658 F.2d 710 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

United States v. Williams,
    989 F.2d 1061 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Wood,
    943 F.2d 1048 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Woodley,
    9 F.3d 774 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**FEDERAL STATUTES**

United States Code (18 U.S.C.)

18 U.S.C. § 3500(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney
BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division
KIRSTIN M. AULT  (CABN 206052)
THOMAS MOORE (ASB 4305-O78T)
Assistant United States Attorneys

    450 Golden Gate Ave., Box 36055
    San Francisco, CA 94102
    Telephone: (415) 436-7151, 6935
    Facsimile: (415) 436-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | No.  CR 03-40210 SBA |
|       Plaintiff,        ) | |
|                 ) | **UNITED STATES' OPPOSITION TO** |
|     v.            ) | **DEFENDANTS' MOTIONS IN LIMINE** |
|                 ) | |
| MOHAMMAD YOUSUF CHAUDHRY,  ) | Pretrial:      September 11, 2007 |
| and              ) | Trial Date:   September 24, 2007 |
| ALI H. KHAN,        ) | Time:        8:30 a.m. |
|                 ) | Court:       Courtroom No. 3 |
|                 ) |               Hon. S. Brown |
|      Defendants.      ) | Armstrong |
|                 ) | |

      Defendants Chaudhry and Khan have filed numerous motions in limine, most of which are duplicative.  The United States files this consolidated response to both defendants' motions and respectfully requests that the Court deny the defendants' motions in their entirety as none has merit based on the law and facts of this case.

## BACKGROUND

      The United States anticipates that the evidence introduced at trial will show that the defendants were involved in a conspiracy to structure transactions to avoid financial reporting requirements and that one of the aims of this conspiracy was to allow defendant Chaudhry to underreport on his federal tax returns the income from two of his businesses – RT Computers ("RT") and Alternative Energy Systems ("AES").  Defendant Kahn was one of defendant

1   Chaudhry's employees who assisted Chaudhry with structuring his business transactions by

2   cashing multiple checks in amounts less than $10,000. These checks were not cashed at banks

3   but were brought by the defendants to local check cashers. Some of those check cashers were

4   corrupt and agreed with the defendants that they would not file Currency Transaction Reports

5   ("CTR's") with the IRS.[1] Defendant Kahn further helped to cover up Chaudhry's scheme by

6   filing false Currency Transaction Reports ("CTR's") on behalf of RT and AES. Defendant Kahn

7   participated in cashing over 150 checks, and defendant Chaudhry personally cashed many more.

8   Only a representative sample of these checks was charged in the indictment; however, all of the

9   cashed checks were part of the same overall course of conduct.

10      RT and AES were in the business of selling counterfeit or stolen software. The

11  businesses operated by making cash purchases of large pallets of common software such as

12  Microsoft Office. The software was typically stolen or had been designated for a specific use,

13  such as the educational market. Software designated for such specific markets was sold by

14  Microsoft at a discount price. Employees at RT and AES would remove the seals and stickers

15  from the educational-use software and replace them with general-use seals and stickers, enabling

16  RT and AES to sell software that was obtained for the discounted educational-use price to

17  retailers at the increased general-use price. Stolen software was similarly repackaged to appear

18  as if it had been legitimately obtained. In addition to assisting defendant Chaudhry with

19  structuring check cashing to avoid financial reporting requirements, defendant Kahn also

20  participated in delivering the stolen software to RT's and AES' customers.

21      Counsel for defendants Chaudhry and Kahn have indicated that they intend to offer as a

22  defense at trial that RT and AES were not in the business of selling software at all. Rather, they

23  claim that the businesses were check cashing services. As a result, according to the defense, the

24  checks written to RT and AES were not for product, and thus were not "income" to the

25  companies that needed to be reported on the companies' tax returns. Instead, the checks from

26

27  _____

28      [1]     The currency transaction reporting requirement that the defendants sought to evade by structuring their transactions was the filing of CTR's with the IRS. CTR's must be filed for all cash transactions over $10,000.

RT's and AES' customers were merely to be cashed by RT and AES, and only the resulting check cashing fee, which was a fraction of the value of the checks themselves, needed to be reported on the corporate returns as income.  In an effort to bolster this defense, beginning in late 2000, the defendants began filing false CTR's with the IRS claiming that checks that had been received by RT and AES in 1999 and 2000 for product were actually currency transactions. While all of these CTR's were filed in defendant Chaudhry's name, handwriting analysis has determined that several of the CTR's were completed by defendant Kahn.

In order to refute this defense, the United States must prove that RT and AES were actually in the business of selling computer software, not in the business of cashing checks.  Part of this proof will come in the form of testimony regarding the day-to-day operations of RT and AES as computer software companies.  As described above, the daily operations of RT and AES consisted of the repackaging and selling of illegally obtained computer software.  Therefore, the testimony of witnesses regarding the operations of those companies necessarily must touch on the illegality of those businesses.

In addition, counsel for defendant Kahn has indicated that he intends to offer as a defense that defendant Kahn was not aware of defendant Chaudhry's illegal business dealings and was only doing what he was told as an employee of the companies.  Evidence of the pervasiveness and obviousness of defendant Chaudhry's illegal conduct, as well as defendant Kahn's participation in aspects of that conduct, is necessary to refute this anticipated defense.

## ARGUMENT

**A.    Evidence Regarding Tax Returns in Years Outside of the Indictment Period Is Relevant to Proving the Defendant's Knowing and Willful Failure to Report Income During the Years Charged in the Indictment.**  *(Chaudhry In Limine #1; Kahn In Limine #I.A)*

**B.    Evidence Regarding Revenue Agent Janet Appleton's Audit of Defendant Chaudhry's Tax Returns is Relevant to His Knowing and Willful Failure to Report Income During the Years Charged in the Indictment.**  *(Chaudhry In Limine #2; Kahn In Limine #I.B).*

In the criminal tax context, willfulness is the "voluntary, intentional violation of a known legal duty."  **Cheek v. United States**, 498 U.S. 192, 201 (1991); **United States v. Powell**, 955 F.2d 1206, 1210 (9th Cir. 1992).  "Bad purpose" or "evil motive" is not part of the equation.

**United States v. Pomponio**, 429 U.S. 10, 12 (1976); **United States v. Kelley**, 539 F.2d 1199, 1204 (9th Cir. 1976).  Since direct proof of a defendant's state of mind is rarely available, circumstantial evidence and inferences drawn therefrom typically establish willfulness.  **United States v. Woodley**, 9 F.3d 774, 779 (9th Cir. 1993); **United States v. Claiborne**, 765 F.2d 784, 797 (9th Cir. 1985); **United States v. Conforte**, 624 F.2d 869, 875 (9th Cir. 1980).

Examples of circumstantial evidence that are admissible to show willfulness include:

A consistent pattern of underreporting large amounts of income.  **United States v.** Kim, 884 F.2d 189, 192 (5th Cir. 1989).

False statements to agents, whether made by defendant or instigated by him.  **United States v. Pistante**, 453 F.2d 412 (9th Cir. 1971).

Repetitious omissions of items of income.  **Sherwin v. United States**, 320 F.2d 137, 141 (9th Cir. 1963).

Extensive use of cash.  See **United States v. Soulard**, 730 F.2d 1292, 1304 (9th Cir. 1984) (affirming jury instruction that the jury may consider extensive use of cash with respect to intent);

The defendant's filing history both before and after the years in question.  **United States v. Farris**, 517 F.2d 226, 229 (7th Cir. 1975) ("no error was committed in admitting the evidence regarding the years immediately prior to and subsequent to the years at issue"); see also  **United States v. Ayers**, 924 F.2d 1468, 1473, 1474 (9th Cir. 1991) (admitting evidence of subsequent acts in tax evasion and conspiracy case because subsequent acts occurred in close proximity to offense, i.e. within two years from when defendant was charged, and were similar to conduct which led to charge of conspiracy); United States v. Turk, 722 F.2d 1439, 1441 (9th Cir. 1983) (en banc) (failure to file income tax returns in two prior years was admissible to show intent); **United States v. Voorhies**, 658 F.2d 710, 715 (9th Cir. 1981) (in tax evasion case, ruling that defendant's subsequent conduct "had the 'likely effect' of misleading and concealing" and was therefore probative of defendant's willfulness); **United States v. Buras**, 633 F.2d 1356, 1359 (9th Cir. 1980) (holding that defendant's filing of tax returns for eight years prior to years in question illustrated that defendant understood his legal obligation to file returns and was therefore admissible for purposes of proving willfulness); **United States v. Snow**, 529 F.2d 224, 225 (9th Cir. 1976) (per curiam) (defendant's failure to file income tax returns in six years preceding years in question was probative of defendant's willfulness).

The absence or destruction of  documents supporting the information in the tax return.  See **United States v. Holovachka**, 314 F.2d 345, 358 (7th Cir. 1963) (the defendant's "statement that the records disclosing the source of this substantial amount of currency were lost. . . . was a factor to be considered by the jury on the issue of willfulness."); **Gariepy v. United States**, 189 F.2d 459, 463 (6th Cir. 1951) (evidence of destruction of pertinent books and records is relevant to willfulness).

The Defendant's professional experience.  See **United States v. Smith**, 890 F.2d 711, 715 (5th Cir. 1989) ("taxpayer's acumen as an entrepreneur" is relevant to willfulness).

The filing of a false return.  **United States v. Marabelles**, 724 F.2d 1374, 1380 (9th Cir. 1984).  **Model Jury Instructions for the Ninth Circuit**, 8.26.2 (1997 Edition-West Publishing Company).

1  **C.  Evidence Regarding Revenue Agent Appleton's Belief that the Defendants Were
      Involved in a Computer Theft Ring is Relevant to Explaining the Actions Taken by
2     Appleton During Her Audit.**  *(Chaudhry In Limine #3).*

3  **D.  Evidence Regarding Defendant Chaudhry's Contribution to Pakistani Charitable
      and Political Causes Will Not Be Introduced Unless the Defendants Open the Door.**
4     *(Chaudhry In Limine #4).*

5       At this time, the United States does not intend to introduce, in its case in chief, evidence

6  of Agent Appleton's belief that the defendants were involved in a computer theft ring or of

7  Chaudhry's contributions to Pakistani charitable and political causes.  However, should the

8  defense open the door to this evidence, such as by introducing evidence of the defendant's good

9  character or attempting to explain certain actions as an effort to assist underprivileged groups or

10 charities, the United States may seek to introduce evidence pertinent to any issues raised by the

11 defense.  See **United States v. Vaandering**, 50 F.3d 696, 704 (9th Cir. 1995).

12 **E.  Evidence That is Inextricably Intertwined With the Conduct Charged in the
      Indictment Should Be Admitted Under Federal Rules of Evidence 401 and 402 or,
13    Alternatively, under Rule 404(b).**  *(Chaudhry In Limine #5; Kahn In Limine #I.C)*

14      Defendants Chaudhry and Kahn seek to exclude evidence that is not expressly charged in

15 the substantive counts of the indictment.  However, because the challenged evidence is part of

16 the same course of conduct as the offenses charged in the indictment, it is inextricably

17 intertwined with the charged conduct and is therefore admissible under Federal Rules of

18 Evidence 401 and 402.  Where such conduct is part of the conspiracy charged in the indictment,

19 evidence concerning it is direct evidence of the conspiracy, even if the acts themselves are not

20 listed as "overt acts" in the indictment itself.  Even if such evidence were not admissible as direct

21 evidence of the crimes charged in the indictment under Rules 401 and 402, such evidence is

22 admissible under Rule 404(b) as evidence of motive, opportunity, plan, intent knowledge, and

23 lack of mistake or accident.

24      1.   <u>Legal Background</u>

25           a.   Evidence of the acts constituting the same course of conduct or conspiracy
                  are admissible under Rules 401 and 402.
26

27      Where evidence is admitted as part of the same course of criminal conduct or to provide

28 background or context for the crimes charged in the indictment, it is analyzed for admissibility

1   under Federal Rules of Evidence 401 and 402, and not under Rule 404(b).  As the Ninth Circuit

2   has repeatedly held:

> "[e]vidence should *not* be treated as 'other crimes' evidence when
> 'the evidence concerning the ['other'] act and the evidence
> concerning the crime charged are inextricably intertwined'
> [citations omitted].  In such cases, the policies supporting the
> exclusion of evidence under Rule 404(b) are inapplicable, since the
> evidence is not being presented to "prove the character of a person
> in order to show action in conformity therewith."  Fed. R. Evid.
> 404(b).  Instead, the evidence is "direct evidence," used to flesh
> out the circumstances surrounding the crime with which the
> defendant has been charged, thereby allowing the jury to make
> sense of the testimony in its proper context.

**United States v. Ramirez-Jiminez**, 967 F.2d 1321, 1327 (9th Cir. 1992).  This is particularly

true where the purported "other acts" are part of the same course of criminal conduct, only parts

of which were charged as substantive counts of an indictment.  See **United States v. Williams**,

989 F.2d 1061, 1070 (9th Cir. 1993) ("The policies underlying rule 404(b) are inapplicable when

offenses committed as part of a single criminal episode become other acts simply because the

defendant is indicted for less than all of his actions ") (internal quotations and citations omitted).

Uncharged conduct is admissible outside the structures of Rule 404(b) where "(1) particular acts

of the defendant are part of ... a single criminal transaction, or when (2) other act evidence ... is

necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible

story regarding the commission of the crime."  See **United States v. Beckman**, 298 F.3d 788,

794 (9th Cir. 2002) (internal citations omitted).

In **Williams**, 989 F.2d at 1070, the Ninth Circuit held that  uncharged cocaine

transactions, which a witness testified occurred contemporaneously with the charged crimes of

possession of distribution amounts of methamphetamine ["crank"] and marijuana, are  not "other

crimes" evidence under Rule 404(b) because "they were linked to and essentially part of the same

conduct as the crank sales."  The "testimony regarding uncharged conduct was inextricable from

and provided necessary context for [the witness'] testimony about the charged conduct.  Even if

portions of [the] testimony could be categorized as 'other crimes' evidence, the district court

would not have abused its discretion in admitting it."  *Id.*

///

1    If the rules were otherwise, the government would be forced to bring indictments

2    consisting of hundreds of counts for every continuing crime that was executed through multiple

3    instances of particular conduct.  Instead, the rules allow the government to charge a

4    representative sample of particular illegal instances but to apprise the jury at trial of the entire

5    background and scope of the criminal scheme.  As the court held in **United States v. Gonzalez**,

6    the "trial court may admit evidence that does not directly establish an element of the offense

7    charged, in order to provide background for the events alleged in the indictment.  Background

8    evidence may be admitted to show, for example, the circumstances surrounding the events or to

9    furnish an explanation of the understanding or intent with which certain acts were performed."

10   110 F.3d 936, 941 (2d Cir. 1997) (citations omitted).  Thus, "evidence of uncharged criminal

11   activity is not considered 'other crimes' evidence under Fed.R.Evid. 404[b] if it 'arose out of the

12   same transaction or series of transactions as the charged offense, if it is inextricably intertwined

13   with the evidence regarding the charged offense, or if it is necessary to complete the story of the

14   crime on trial.'" *Id*. at 942 (citations omitted).  Similarly, evidence of uncharged criminal activity

15   is not considered "other crimes" evidence if it explains the defendant's intent or knowledge

16   concerning the charged crimes.  See **United States v. Kallin**, 50 F.3d 689, 696 (9th Cir. 1995)

17   (evidence of the defendant's filing of false corporate tax returns not charged in the indictment

18   properly admitted to show defendant's intent to file false personal tax returns as charged in the

19   indictment).

20          b.    Evidence of background, context, and similar instances of misconduct are
                 admissible under Rule 404(b).

21

22   Even if the evidence were not admissible as inextricably intertwined with the charged

23   conduct, it is admissible if it meets the requirements of Rule 404(b).  The Ninth Circuit applies a

24   four-part test to determine the admissibility of evidence under Rule 404(b): (1) there must be a

25   sufficient degree of evidence for the jury to find that the other acts were in fact committed; (2)

26   the other acts evidence may only be introduced to prove a material issue in the case; (3) the other

27   acts must not be too remote in time to the conduct charged; and (4) the other acts must be

28   sufficiently similar to the charged conduct when they are being introduced to show intent.

1  **United States v. DeSalvo**, 41 F.3d 505, 509 (9th Cir. 1994).

2      Rule 404(b) is a rule of "inclusion," and "unless the evidence of other crimes tends only

3  to prove propensity, it is admissible." **United States v. Rrapi**, 175 F.3d 742, 748 (9th Cir. 1999),

4  quoting **United States v. Jackson**, 84 F.3d 1154, 1159 (9th Cir. 1996); **United States v. Diggs**,

5  649 F.2d 731, 737 (9th Cir. 1981) ("This circuit has adopted the position that Rule 404(b) is an

6  inclusionary rul i.e., evidence of other crimes is inadmissible under this rule only when it proves

7  nothing but the defendant's criminal propensities."), *overruled on other grounds*, **United States**

8  **v. McConney**, 728 F.2d 1195 (9th Cir. 1984); **see also** **DeSalvo**, 41 F.3d at 509 (Rule 404(b) is a

9  rule of "inclusion").

10      Where, as here, the evidence is part of a single criminal course of conduct, it should be

11  admitted under Rule 404(b). See **Diggs**, 649 F.2d at 737 (holding that evidence of uncharged

12  acts that were part of the same scheme to defraud was probative of the defendant's specific intent

13  to defraud); *Beckman*, 288 F.3d at 794.

14      2.    Each piece of evidence cited by the defense is admissible under Rules 401, 402, 403 and 404(b).

15

16      Each piece of evidence cited by the defendants is admissible under Rules 401 and 402

17  because it is inextricably intertwined with the offenses charged in the indictment.  Even if it were

18  not, the evidence is admissible under Rule 404(b) as evidence of motive, opportunity, plan,

19  intent, knowledge, and absence of mistake or accident.

20          a.    Evidence of trade in illegal software.

21              i.    inextricably intertwined

22      The defendants' motion to exclude evidence of their trade in illegal software is essentially

23  a motion to exclude the entire background and context in which the crimes charged in the

24  indictment occurred, and it should be denied.  The indictment charges tax and structuring

25  violations based on actions the defendants took as part of RT's and AES' illegal trade in

26  counterfeit and stolen computer software.  One of the primary motivations and impetuses for

27  committing the crimes charged in the indictment was to hide the illegal activities of these two

28  companies.  Excluding evidence of the business in which the companies was engaged would

1   deny the jury the background, context, and motivation for committing the charged crimes.  In

2   addition, many of the United States' witnesses were partners in or victims of the defendants'

3   illicit sales activities, and evidence concerning the context in which they were doing business

4   with the defendants is necessary to explain both their relationship to the defendants and the

5   actions and events that will be described by their testimony.  No rule of evidence requires or

6   encourages the exclusion of such evidence.  *See Beckman*, 298 F.3d at 793-94 (evidence

7   necessary to provide a "coherent and comprehensive story," to explain the relationship between

8   witnesses and the defendant, and to refute the defendant's claim of lack of intent and knowledge

9   is "inextricably intertwined" with charged conduct and is admissible as direct evidence, not

10  subject to Rule 404(b) analysis).

11      As discussed above, the business of RT Computers and AES was to obtain common

12  software packages such as Microsoft Office either illegally or with markings that indicated the

13  software was only to be sold to a particular type of customer, such as teachers or educational

14  institutions.  The software intended for a particular market was priced lower than software

15  designated for general use.  RT and AES would then repackage the stolen or educational-use

16  software to indicate that it could be sold for general use.  In this way, RT and AES were able to

17  either hide the illegal origins of the software or to obtain software at the discounted prices

18  intended for educators, but sell the same software at the increased prices intended for regular

19  consumers.

20      RT's and AES' customers paid for the software using checks.  However, instead of

21  depositing those checks into business accounts, as a legitimate business owner would do, the

22  defendants converted the checks into cash at check cashing stores in the Bay Area.  The cash-

23  based nature of the business served two purposes: it hid the illegal nature of the underlying

24  business, and it allowed defendant Chaudhry to underreport the income of his two businesses on

25  their corporate tax returns.  Thus, the illicit nature of RT's and AES' businesses form the

26  background and context in which the crimes charged in the indictment occurred.  See **United**

27  **States v. King**, 200 F.3d 1207, 1215 (9th Cir. 1999) (testimony explaining the general nature of

28  the defendant's business activity was properly admitted as "direct evidence 'inextricably

1  intertwined' with evidence of the crime charged").  Moreover, the illegal cash-based business
2  provides the motivation, explains the plan, illuminates the defendants' intent and knowledge, and
3  explains away any assertion of mistake or accident, for the crimes charged in the indictment.  *See*
4  *Kallin*, 50 F.3d at 696 (evidence of uncharged fraud on corporate tax returns admitted to explain
5  intent, plan and *modus operandi* of fraud on personal tax returns charged in the indictment).

6          In addition, the evidence is necessary to refute the defenses that have been asserted by
7  both defendants.  Defendant Kahn has stated that he was the innocent employee of defendant
8  Chaudhry and that he was not aware that any of his conduct was illegal.  However, witnesses will
9  testify to the pervasiveness of illegal conduct at RT and AES, including that the shared
10 warehouse for these businesses was filled with illegal software and that the practice of
11 repackaging that software using illicitly obtain stickers and seals was open and notorious.  Such
12 evidence will refute defendant Kahn's assertion that he was unaware of the illegal practices of
13 RT and AES and that he was simply an innocent employee of defendant Chaudhry.  Similarly,
14 defendant Chaudhry has asserted that he was not in the business of selling computer software but
15 was instead simply providing a check cashing service for customers in the software industry.
16 The United States must be permitted to introduce evidence of the true nature of RT's and AES'
17 business in order to refute this asserted defense.  See **United States v. Buchannan**, 633 F.2d
18 423, 425 (5th Cir. 1981) ("[T]he prosecution is under no obligation to wait and see whether the
19 defendant argues the non-existence of an element of crime before the prosecution presents
20 evidence establishing that element.")

21         Evidence of the illicit nature of RT's and AES' software business is admissible under
22 Rules 401 and 402 as inextricably intertwined with the charged conduct because it provides the
23 background and context in which that conduct occurred.  See **Beckman**, 298 F.3d at 794.
24 Moreover, such evidence is necessary to refute the asserted defenses of both defendants.

25                    ii.    Rule 404(b)

26         In addition, the challenged evidence is admissible under Rule 404(b) because it meets the
27 four requirements for admissibility under that rule: (1) it explains the motive, opportunity, plan,
28 intent, knowledge, and lack of mistake or accident of the defendants in committing the crimes

1  charged in the indictment; (2) it occurred at the same time as the charged conduct; (3) witnesses

2  who directly participated in the criminal activity with the defendants will testify regarding their

3  actions; and (4) both the charged and uncharged conduct are similar in that they relate to the

4  defendant's intent to defraud either the United States government or the customers and suppliers

5  of his business.[2]  See **Beckman**, 298 F.3d at 794; see also **United States v. King**, 200 F.3d 1207,

6  1215 (9th Cir. 1999) (evidence of fraudulent schemes sufficiently similar to warrant introduction

7  under Rule 404(b)).

8                              iii.    Rule 403

9         Such evidence is also admissible under Rule 403 because it is not unfairly prejudicial to

10  the defendants.  This evidence is not of the character that would prompt the jury to base its

11  decisions on impermissible factors, such as shock or outrage at the defendants' conduct.  See

12  **Ramirez-Jiminez**, 967 F.2d at 1327 ("The unfair prejudice is measured by the extent to which

13  the testimony 'makes conviction more likely because it provokes an emotional response in the

14  jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart

15  from its judgment as to his guilt or innocence of the crime charged.'"), quoting **United States v.**

16  **Bailleaux**, 685 F.2d 1105, 1111 (9th Cir. 1982).  Rather, it is the type of evidence that will prove

17  the conduct that is in issue.  *See Ramirez-Jiminez*, 967 F.2d at 1327 (evidence not excludable

18  under Rule 403 where it "is not the sort of conduct which would provoke a strong and unfairly

19  prejudicial emotional response from the jury.  Rather, it is prejudicial only to the extent that it

20  tends to prove the fact justifying its admission.").  In addition, the defendants' asserted defenses

21  have opened the door to the introduction of the evidence necessary to refute those defenses.

22  Because evidence of the nature of RT's and AES' business is necessary to explain the context in

23  which the crimes charged in the indictment occurred and to disprove the defendants' anticipated

24  defenses, as well as to elucidate the motivations and intent of the defendants, the defendants'

25

26         [2]        The last factor of "similarity" is not always necessary.  If the Court rules that the
   evidence is admissible for some other purpose – to show knowledge for example – then
27  similarity is not required.  *See Ramirez-Jiminez*, 967 F.2d at 1326 ("When offered to prove
   knowledge, however, the prior act need not be similar to the charged act as long as the prior act
28  was one which would tend to make the existence of the defendant's knowledge more probable
   than it would be without the evidence.").

motion to exclude such evidence should be denied.

                  b.          Evidence of the amount of defendant Chaudhry's tax deficiency.

                        i.        <u>inextricably intertwined</u>

As discussed above, one of the primary motivations for the commission of the crimes charged in the indictment was for defendant Chaudhry to avoid paying taxes on the income earned by his businesses RT and AES.  The amount of money defendant Chaudhry avoiding having to pay to the IRS is directly relevant to his motivation and purpose for committing the charged crime. Thus, this evidence is admissible as inextricably intertwined with the charged conduct because it forms part of the background and context of that conduct.

                       ii.      <u>Rule 404(b)</u>

In addition, this evidence also tends to prove the defendants' motivation, plan, intent, and absence of mistake or accident and is therefore admissible under Rule 404(b).  Because the deficiency is contemporaneous with the charged crimes, it is not remote in time.  Evidence of the deficiency will be provided by one of the United States' expert witness and so satisfies the sufficiency requirement of Rule 404(b).  The conduct leading to the deficiency is the same as the conduct charged in the indictment.  Thus, similarity, to the extent it is required, has been met. Therefore, even if the evidence were not inextricably intertwined with the charged conduct, it would be admissible under Rule 404(b).

                       iii.     <u>Rule 403</u>

The evidence should not be excluded under Rule 403 because the amount of the deficiency is not so large as to shock the conscience.  The evidence is highly probative of the defendants' motive, intent, and lack of mistake or accident, and the danger that the jury will vote to convict the defendants based on the size of defendant Chaudhry's tax deficiency, rather than the defendants' actual conduct, is small.  Therefore, the balance weighs in favor of admissibility, and the defendants' motion to exclude this evidence should be denied.

///

///

///

1    c. Evidence of checks other than those charged in the indictment.

2     i. <u>inextricably intertwined</u>

3  As discussed above, defendants Chaudhry and Kahn were involved in a continuing

4 scheme to exchange business checks for cash instead of depositing those checks into a business

5 bank account.  The defendants conducted their transactions in such a way to avoid the filing of

6 CTR's as part of their effort to hide the true income of RT and AES from the IRS.  Although

7 only selected representative checks were charged as substantive counts in the indictment, the

8 uncharged checks are part of the same criminal course of conduct and thus are inextricably

9 intertwined with the charged offenses.  See **United States v. Mundi**, 892 F.2d 817, 820 (9th Cir.

10 1989) (where defendant charged in superseding indictment with scheme to defraud only one

11 travel agency, evidence concerning ten other travel agencies to which the same scheme extended

12 was admissible as "inextricably intertwined" with the charged offense, or, in the alternative,

13 under Rule 404(b) as evidence of intent).  Moreover, the checks that are not charged as part of

14 the substantive counts are still part of the charged conspiracy.  See **United States v.**

15 **Montgomery**, 384 F.3d 1050, 1061-62 (9th Cir. 2004) (evidence of 1,006 instances of mail fraud

16 admissible as "inextricably intertwined" with the single count of conspiracy and nineteen

17 substantive counts of mail fraud charged in the indictment where each instance comprised part of

18 the conspiracy).  The evidence of the uncharged checks, therefore, is inextricably intertwined

19 with the charged conduct and should be admitted as direct evidence of the conduct charged in the

20 indictment.

21    ii. <u>Rule 404(b)</u>

22  This evidence is also admissible under Rule 404(b) as evidence of the defendants' plan,

23 intent, knowledge, *modus operandi*, and absence of mistake or accident.  Each of these issues is

24 material to the trial.  Because the uncharged checks and the charged checks occurred during the

25 same continuous course of conduct, and in many cases contemporaneously, the uncharged checks

26 are not too remote in time to the charged conduct.  Evidence of the uncharged checks will be

27 introduced in the form of the checks themselves, meeting the sufficiency requirement of Rule

28 404(b).  And the conduct involving the uncharged checks is identical to the conduct charged in

1    the indictment, satisfying the similarity requirement, to the extent that this requirement applies.

2    Therefore, the uncharged checks also meet the admissibility requirements of Rule 404(b).

3                            iii.    Rule 403

4        Because the conduct involving the uncharged checks is identical to the conduct involving

5    the charged checks, the risk of unfair prejudice is minimal.  Presenting the jury with additional

6    instances of the same conduct will not be introducing them to facets of the defendants' character

7    which evidence of the charged conduct will not already address.  On the other hand, the evidence

8    of the entire scheme is highly probative of the defendants' intent, knowledge, and lack of mistake

9    or accident.  Therefore, the balance weighs in favor of admitting the evidence, and the

10   defendants' motion to exclude should be denied.

11               d.    Evidence of Clarence Walker's compliance review.

12       The compliance file compiled by corrupt Revenue Agent Walker contains multiple

13   documents of various types.  Many of those documents are standard forms that constitute

14   business or public records under Federal Rule of Evidence 803(6) and (8).  As such, they are

15   admissible under these exceptions to the hearsay rule.

16       To the extent that notations on those documents reflect common practices of IRS revenue

17   agents that are not unique to Clarence Walker, the United States anticipates that another revenue

18   agent could explain those common concepts and practices to the jury.  Because the defendants

19   have not identified specific documents they seek to exclude, the United States is unable to

20   provide a particularized response to this portion of their motion.

21               e.    Payments from RT and AES customers other than those charged in the
22                     indictment.

23                            i.    inextricably intertwined

24       As with the uncharged cashed checks discussed above, payments from RT and AES

25   customers other than those charged in the indictment form part of the same continuing course of

26   criminal conduct as that charged in the indictment.  Thus, those payments are inextricably

27   intertwined with the charged conduct and should be admitted under Rules 401 and 402.  See

28   United States v. Sayakhom, 186 F.3d 928, 939 (9th Cir. 1999) (evidence of continuing scheme to

1    defraud involving entity other than that charged in the indictment admissible as "inextricably

2    intertwined" with charged conduct); see also Montgomery, 384 F.3d at 1061-62;  **Mundi**, 892

3    F.2d at 820.  Moreover, those payments form part of the conspiracy charged in count six of the

4    indictment.  See **United States v. Serang**, 156 F.3d 910, 915 (9th Cir. 1998) (government not

5    precluded from introducing evidence relevant to entire conspiracy or scheme "simply because the

6    defendant is indicted for less than all of his actions.") (internal quotations and citations omitted).

7    Therefore, they are admissible as direct evidence of the charged conduct.

8                              ii.    Rule 404(b)

9            In addition, as with the uncharged checks, the uncharged payments are also admissible

10   under Rule 404(b) to show intent, knowledge, motive, plan, *modus operandi*, and absence of

11   mistake or accident.  The payments were made during the same course of conduct, and in many

12   cases contemporaneously, with the charged conduct and so are not remote in time.  Evidence of

13   the payments will be in the form of checks, invoices, and direct testimony from the customers

14   who made the payments, satisfying the sufficiency requirement of Rule 404(b), and the payments

15   are identical to the conduct charged in the indictment, satisfying the similarity requirement.

16   Therefore, the evidence of uncharged payments is also admissible under Rule 404(b).

17                              iii.    Rule 403

18           As with the evidence of the uncharged checks, the evidence of the uncharged payments

19   presents the same negative character aspects of the defendants as the charged conduct.

20   Therefore, introduction of evidence regarding the additional payments presents no new

21   prejudicial information to the jury, and, therefore the risk of unfair prejudice is minimal.

22   However, the evidence is highly probative of the defendants' plan, knowledge, intent, *modus*

23   *operandi*, and absence of mistake or accident.  Therefore, the balance weighs in favor of

24   admitting the evidence, and the defendants' motion should be denied.

25                      f.    Evidence of activity in defendant Chaudhry's bank accounts.

26                              i.    inextricably intertwined

27           As discussed above, the defendants were engaged in a continuing course of criminal

28   conduct, only a portion of which is charged in the indictment.  However, the circumstances

surrounding the charged conduct are inextricably intertwined with the charged conduct. Therefore, activities occurring in defendant Chaudhry's bank accounts outside of the years charged in the indictment provide background and context that explains the actions that occurred during the charged years as well as the motivations for those actions. For example, the fact that defendant Chaudhry conducted some business through his business bank accounts but not other business tends to prove that the business Chaudhry kept outside of legitimate banking channels was business he intended to hide from government regulators. Thus, showing that for the time period before the charged conduct, the defendant conducted business through a legitimate bank account but then switched to conducting business through illegitimate check cashers tends to show that the defendant was not mistaken in his actions but purposefully and intentionally chose to evade normal business banking procedures and opt for illicit processes that would hide his conduct from the IRS. Thus, this evidence is admissible because it is inextricably intertwined with the charged conduct and is necessary to provide context and explain the course of action underlying the charges in the indictment.

### ii.    Rule 404(b)

In addition, this evidence is admissible under Rule 404(b) to show plan, motive, intent, knowledge, and absence of mistake or accident. The uncharged conducted took place contemporaneously with the charged conduct, or shortly before, and will be shown by the introduction of bank records, meeting the sufficiency requirement. The cashing or depositing of checks through the defendant's bank account, as opposed to through check cashers, is similar conduct. Therefore, the requirements of Rule 404(b) are met, and the evidence should not be excluded.

### iii.    Rule 403

The danger of unfair prejudice by showing the defendant performing legitimate banking transactions is, at most, minimal, and arguably non-existent. The probative value, however, of demonstrating the defendant's change in behavior from using a legitimate banking system to an illegitimate one, is high. Therefore, the balance weighs in favor of admitting the evidence, and the defendants' motion should be denied.

g.    Evidence of defendant Chaudhry's participation in preparing CTR's.

i.    inextricably intertwined

The United States intends to introduce evidence that the defendants personally prepared many of the CTRs filed under defendant Chaudhry's name for checks that were written to RT and AES by software customers.  This evidence is again part of the same course of criminal conduct as that charged in the indictment.  The filing of false CTR's was part of the defendants' effort to cover up the criminal activities in which they had engaged.  The defendants filed these documents in anticipation of asserting the defense that RT and AES were involved in the business of check cashing, rather than the business of software sales, so that the income received from customers did not need to be reported on the corporate tax returns.

The filing of the false CTR's was part of the overall plan in which the defendants engaged to hide the income received by RT and AES from the IRS.  Thus, it is inextricably intertwined with the charged conduct.  See **Ramirez-Jiminez**, 967 F.2d at 1327 (evidence that defendant lied to government agents was "inextricably intertwined" with charged conduct because his "statements to the officers came in the course of the conduct with which he was charged, and were probative of his consciousness that his conduct was illegal").  Moreover, the defendants' decision to engage in this cover up reflects their consciousness of guilt and thus is relevant to showing their purpose in structuring the cash transactions.  This evidence, therefore, is inextricably intertwined with the charged conduct and should be admitted as direct evidence of the defendants' commission of the crimes charged in the indictment.

ii.    Rule 404(b)

In addition, these activities show the defendants' intent, knowledge, plan, and lack of mistake or accident.  Importantly, the fact that the defendants' filled out CTRs themselves shows that the defendants were fully aware of this reporting requirement and tends to prove that their actions in structuring checks with check cashers was for the purpose of evading those requirements.  The filling out of the CTR's was either contemporaneous with the charged conduct or within one year following that conduct.  The evidence will be presented through the CTR's themselves as well as expert testimony regarding handwriting analysis, and, thus,

sufficiently shows that the defendants committed the acts. To the extent that similarity is required, the conduct of lying to the IRS is similar to the fraudulent conduct charged in the indictment. Thus, this evidence is admissible under Rule 404(b).

iii.    Rule 403

In addition, the evidence should not be excluded under Rule 403 because it is unlikely to "awaken in the jury an irrational or emotional desire to punish [the defendants], leading the jury to convict [them] based on [their] character alone. Instead, the main source of prejudice would come from the jury drawing a permissible inference – namely that [the defendants were] cognizant of the illegal act [they were] committing, and [were] therefore lying to cover [their] guilt." **Ramirez-Jiminez**, 967 F.2d at 1327-28. The evidence is highly probative of the defendants' state of mind and lack of accident or mistake, and the danger of unfair prejudice is minimal. Therefore, the evidence should be admitted, and the defendants' motion to exclude it should be denied.

h.    Evidence of Relationship between defendant Chaudhry and Sheila Wu and Radu Tomescu.

i.    inextricably intertwined

Fact witnesses called by the United States, including Adnan Torlak and Leng Kouch, will testify to their personal knowledge of events relevant to the crimes charged in the indictment. Such evidence will include the business relationship between defendant Chaudhry and WWS proprietors Sheila Wu and Radu Tomescu. This testimony provides the context in which the crimes charged in the indictment took place and is, therefore, inextricably intertwined with the charged conduct. See **King**, 200 F.3d at 1215. In addition, such testimony is necessary to refute the defense that RT and AES were not in the business of cashing checks but were in fact in the business of selling software. This testimony is also necessary to show the "background and development of the conspiracy" that is charged in the indictment between the two defendants. **Serang**, 156 F.3d at 915.

ii.    Rule 404(b)

This evidence is also admissible under Rule 404(b) because it shows the motivation, intent, plan, and absence of mistake or accident on the part of the defendants. The uncharged

1  conduct occurred in the months and years leading up to the charged conduct and continued

2  contemporaneously with the acts charged in the indictment; therefore, it is not too remote in time.

3  The uncharged conduct will be introduced through the testimony of witnesses with personal

4  knowledge of the events and relationships at issue.  Therefore, the evidence is admissible under

5  Rule 404(b).

iii.    <u>Rule 403</u>

7        The evidence that the defendants participated in frauds other than those charged in the

8  indictment will be minimally prejudicial as the jury will already have been presented with

9  evidence that the defendants' lied to defraud the IRS.  This evidence, however, is highly

10  probative of the defendants' actions and is necessary to explain the relationships and events that

11  will be discussed as part of the charges presented in the indictment.  The Rule 403 balance,

12  therefore, weighs in favor of admitting the evidence, and the defendants' motion should be

13  denied.

iv.    <u>cumulativeness</u>

15        This testimony is not cumulative where the witnesses have personal knowledge of events

16  in which other witnesses did not participate.  See **United States v. Ives**, 609 F.2d 930, 933 (9th

17  Cir. 1980) ("Cumulative evidence replicates other admitted evidence.").  Moreover, the

18  testimony of corroborating witnesses is not cumulative where, as here, the credibility of some

19  witnesses, such as those cooperating with the United States, may be challenged.  See **Hendricks**

20  **v. Calderon**, 70 F.3d 1032, 1044 (9th Cir. 1995) (defense counsel found ineffective for failing to

21  introduce corroborating evidence of witnesses whose credibility was subject to attack).

22        i.    Evidence of the defendants' dealings with check cashers other than those
         pertaining to transactions charged in the indictment.

i    <u>inextricably intertwined</u>

25        As discussed repeatedly above, the indictment charges only a representative sample of the

26  illegal conduct engaged in by the defendants as part of a continuing course of criminal conduct.

27  As the Ninth Circuit has expressly held, other instances of conduct that are part of the same

28  criminal scheme are admissible as inextricably intertwined with the charged conduct.  See

1    **Montgomery**, 384 F.3d at 1061-62; **Sayakhom**, 186 F.3d at 939; **Serang**, 156 F.3d at 915;

2    **Mundi**, 892 F.2d at 820.  Moreover, testimony from check cashers regarding discussions they

3    had with defendant Chaudhry regarding the currency transaction reporting requirements and his

4    intention to evade those requirements are directly relevant to the defendants' motivation in

5    structuring the currency transactions.  Thus, such conversations are necessary to prove an

6    element of the charged conduct: the defendants' purpose in breaking down larger checks into

7    smaller amounts so as to evade the filing of a CTR.  Thus, this evidence is admissible as

8    inextricably intertwined conduct.

9                    ii.    Rule 404(b)

10         In addition, such evidence is relevant to showing motive, intent, knowledge, plan, and

11   absence of mistake or accident under Rule 404(b).  The transactions at issue occurred either

12   contemporaneously with the charged conduct or within a short time before or after that conduct.

13   The evidence will be introduced in the form of the checks themselves as well as testimony from

14   the check cashers, and the uncharged conduct is identical to that charged in the indictment.

15   Therefore, all the requirements of Rule 404(b) are met and the evidence may be admitted under

16   this alternate ground.

17                   iii.    Rule 403

18         As with the evidence of uncharged checks and payments, the evidence of transactions

19   with check cashers other than those presented in the indictment is minimally prejudicial as it

20   does not introduce the jury to any facets of the defendants' characters with which they will not

21   already be familiar.  On the other hand, this evidence is highly probative of the entire scope of

22   the conspiracy between the defendants, their plan, their motivations, their intent and knowledge,

23   and their lack of mistake or accident.  Therefore, the balance under Rule 403 weighs in favor of

24   admissibility, and the defendants' motion should be denied.

25   **F.    Testimony That Is Relevant and Based on Witness' Personal Knowledge Should Not
           Be Excluded.**  *(Chaudhry In Limine # 6)*
26

27         The testimony of the four witnesses cited by the defense – Alex Tennis, Mohammed

28   Saleem, Mohammed Nasim, and Jaswant Sra – will be based on those witnesses' personal

1  knowledge and will not be cumulative of other testimony at the trial.  Each of these witnesses

2  participated in conversations with defendant Chaudhry during which Chaudhry made statements

3  relevant to the crimes charged in the indictment.  Because only these witnesses with personal

4  knowledge of these conversations can testify as to their content, such evidence is not cumulative

5  of other witnesses' testimony and should not be excluded.

6     Alex Tennis will testify regarding his role as a supplier of illicit software to AES and RT

7  Computers.  His testimony is relevant to the illicit nature of the business as well as defendant

8  Chaudhry's knowledge and intent.  The other three witnesses will testify regarding the

9  defendant's relationship with Clarence Walker.  If the defense does not assert that Clarence

10  Walker's advice is a defense to the defendants' conduct, then it is likely that this testimony will

11  not be needed.  However, if the defendants seek to raise Walker as a defense, either through

12  presentation of their own case or through their cross-examination of the United States' witnesses,

13  the United States will call these witnesses to rebut any assertions or inferences raised by such a

14  defense.

15  **G.   The Summary and Expert Testimony of Charles Tonna is Relevant and
        Appropriate in This Case.**  *(Chaudhry In Limine #7).*
16

17  **H.   The Summary and Expert Testimony of Richard Adams is Relevant and
        Appropriate in This Case.**  *(Chaudhry In Limine #8).*

18     Near the end of its case, the United States will call as a tax summary witness, Revenue Agent

19  Charles Tonna, who is trained in accounting and the computation of tax liabilities.  The United

20  States will also call Special Agent Rick Adams as a currency transaction summary and expert

21  witness, who is trained in currency transaction reporting requirements and compliance therewith.

22  These witnesses will provide an analysis of all the witness testimony at trial, the numerous

23  financial records introduced into evidence and explain the tax consequences of the Government's

24  evidence in Tonna's case and reporting requirements in Adams' case.  Both agents will provide

25  Rule 1006 summaries of voluminous records related to their particular expertise..

26     The Rule 1006 summaries must summarize information which is voluminous, admissible,

27  and available for inspection.  **City of Phoenix v. Com/Systems, Inc.**, 706 F.2d 1033, 1038 (9th

28  Cir. 1983); **United States v. Johnson**, 594 F.2d 1253, 1255 (9th Cir. 1979).  While the

1    underlying documents must be admissible, they need not be admitted at trial.  **Johnson**, 594 F.2d

2    at 1257, n. 6;  **United States v. Meyers**, 847 F.2d 1408, 1412 (9th Cir. 1988).  Such summaries

3    are admissible evidence.  Id.; **United States v. Wood**, 943 F.2d 1048, 1053 (9th Cir. 1991).

4        The introduction of summary witness testimony and summary schedules has been approved

5    by the Ninth Circuit in tax cases, **United States v. Marchini**, 797 F.2d 759, 756-766 (9th Cir.

6    1986); **United States v. Greene**, 698 F.2d 1364, 1367 (9th Cir. 1983); **Barsky v. United States**,

7    339 F.2d 180 (9th Cir. 1964).  "The fact of a tax due and owing may be established by

8    documentary evidence of tax liability, accompanied by a summary by an expert."  **United States**

9    **v. Voorhies**, 658 F.2d 710, 715 (9th Cir. 1981).  A summary witness draws conclusions from the

10   evidence presented at trial.  **United States v. Esser**, 520 F.2d 213, 217-18 (7th Cir. 1975).  A

11   summary witness may be used to help the jury organize and evaluate evidence which is factually

12   complex and fragmentally revealed in the testimony of a multitude of witnesses.  See **United**

13   **States v. Baker**, 10 F.3d 1374, 1411 (9th Cir. 1983).  The summary witness may review the

14   evidence in a manner that advocates the Government's theory of the case, and need not give

15   effect to the contentions of the defendant.  Barsky, at 181; **United States v. Moore**, 997 F.2d 55,

16   58-59 (5th Cir. 1993).  Copies of the summaries may be published to the jury while the expert

17   testifies concerning them.  Id.

18       Defendant also seeks to exclude the expert testimony by IRS Special Agent Rick Adams

19   ("Adams") arguing that while testimony regarding the "structure" of criminal organizations is

20   admissible when a conspiracy is charged, such testimony is inadmissable if the conspiracy

21   involves a small or simple criminal enterprise instead of large one. Chaudhry Mot. in Limine at

22   page11; 2-5.   Defendant's reliance on **United States v. Pineda-Torres**, 287 F.3d 860 (9th

23   Cir.2002) is unfounded.   In **Pineda-Torres** the Ninth Circuit states that expert testimony

24   regarding the criminal organization structure is not admissible when the defendant is not charged

25   with a conspiracy and it does not impose a size of the conspiracy test.  **Id**. at 863, see also **United**

26   **States v. Murillo**, 255 F.3d 1169, 1177 (9th Cir.2002) .  Here, because conspiracy was charged,

27   evidence of how structuring enterprises operate is admissible even under **Pineda-Torres**.  The

28   Court should also deny defendant's request as expert testimony is admissible if it will assist the

1    jury in understanding the mode of operation of the defendants. **United States v. McCollum**, 802

2    F.2d 344, 346 (9th Cir.1986) ("Expert testimony regarding the typical structure of mail fraud

3    schemes could help the jury to understand the operation of the scheme and to assess [the

4    defendant]'s claim of non-involvement."). Here, the testimony of Special Agent Adams is also

5    expected to show the modus operandi of a structuring scheme, how they break up transactions to

6    avoid reporting. **Murillo**, 255 F.3d at 1178. Accordingly, the agents testimony should be

7    admitted.

8        The summary schedules, because they will reflect only evidence that is admitted or

9    admissible at trial, by necessity will not be finalized until shortly before the agent testifies. As

10   such, final copies of the summary schedules will be provided to the defense shortly before the

11   agent testifies. However, Revenue Agent Tonna has prepared "draft" schedules reflecting the

12   evidence the Government anticipates will be admitted. These "draft" schedules, which are

13   internal Government work papers, are protected from disclosure pursuant to Rule 16(a)(2) of the

14   Federal Rules of Criminal Procedure. However, in the spirit of discovery, the United States will

15   provide "draft" schedules to the defendants prior to the pretrial conference.

16       Consequently, the United States believes that the court should admit into evidence the

17   testimony of the summary witnesses and summary schedules to assist the jury in this case.

18   **I.    Impeachment Material Has and Will Be Disclosed.** *(Chaudhry In Limine #9).*

19       The United States has already made a motion with the Court to disclose the Presentence

20   Investigation Reports (PSRs) of its cooperating witnesses. The Court requested that the United

21   States obtain consent from those witnesses to disclose their PSRs. The United States has spoken

22   with counsel for each of the cooperating witnesses, and counsel have no objection to disclosure

23   of the PSRs to the defense provided that the PSRs are subject to a protective order that they are

24   only to be used in connection with these proceedings. The United States now requests that the

25   Court grant its motion and permit it to turn over the PSRs for its cooperating witnesses to the

26   defense in this matter, subject to an appropriate protective order.

27       The United States has disclosed the plea agreements for each of its cooperating witnesses.

28   The United States has disclosed Judgment and Conviction documents for witnesses Leng Kouch,

1  Radu Tomescu and Adnan Torlak.  The United States has not disclosed the Judgement and

2  Conviction document for Sheila Wu as that document remains sealed.  The United States hereby

3  requests that the Court order that the Judgement and Conviction document of Sheila Wu be

4  unsealed for the limited purpose of providing it to the defense in this case subject to the

5  protective order that it be used only in connection with this matter.

6         The United States has disclosed the IRS's Title 31 Compliance File regarding Edwin Lin.

7  The United States believes that it has complied with its obligations to disclose impeachment

8  material for this witness; however, if other materials come to the United States' attention, the

9  United States will disclose those materials as soon as practicable.

10        The United States has requested a review of each testifying federal law enforcement

11 agent's personnel file for material subject to disclosure under *Henthorn* and *Brady*.  If any such

12 material is found, the United States will disclose such material to the defense or raise any

13 relevant issues with the Court.

14 **J.     Jenks Act Disclosures Have Been and Will Continue to Be Made.**

15        The United States has disclosed statements of its witnesses that are in its possession. The

16 United States will continue to interview witnesses and collect evidence up to and through the trial.

17 This is necessary because as the defense discloses its theories, the United States must gather

18 additional evidence to refute those theories.  In addition, the United States must meet with its

19 witnesses to prepare for trial.  Conversations with those witnesses may yield additional statements

20 that must be produced to the defense or additional information that the United States must

21 investigate.  Any new statements will be disclosed as soon as practicable; however, statements

22 collected near or after the pretrial conference obviously cannot be disclosed by that date.

23        The defense is not entitled to receive any such statements until *after* the witnesses have

24 testified at trial.  *See* 18 U.S.C. § 3500(b).  Nevertheless, the United States, in an effort to avoid

25 further continuances, has provided statements well in advance of trial.  The United States will

26 continue to provide any new statements as soon as practicable after reports are drafted.  The United

27 States respectfully requests that the Court deny the defendants' effort to curtail the United States'

28 pretrial preparation and continuing investigation.  The defendants' request has no basis in law and

1   is contrary to professional legal practice, which entails continuing to investigate and prepare for trial

2   until the last piece of evidence has been submitted to the jury.

3                                                    **CONCLUSION**

4           For the foregoing reasons, the United States respectfully requests that the Court deny the

5   defendants' motions in limine in their entirety.

6

7                                                Respectfully Submitted,

8                                                SCOTT N. SCHOOLS
                                                 United States Attorney

9

10                                               /s/ Thomas Moore
                                                 THOMAS MOORE
11                                               KIRSTIN M. AULT
                                                 Assistant United States Attorneys

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28