1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3

4

UNITED STATES OF AMERICA,                                    No.  C 03-40210 SBA

Plaintiff,                          **ORDER**

5

6

v.                                              [Docket Nos. 414, 427]

MOHAMMAD YOUSUF CHAUDHRY,
*et al.*,

7

8

Defendants.

9

10

**REQUEST BEFORE THE COURT**

11

Before the Court are the following pleadings:

12

(1)     Kahn's Motion in Limine to Exclude Evidence Relating to Other Alleged Crimes and

13

Bad Acts ("MIL") [Docket No. 73];

14

(2)     Kahn's Motion in Limine for Reconsideration of Defendant Khan's Motion for

15

Severance (the "MTR") [Docket No. 74];

16

(3)     Kahn's Motion in Limine to Exclude Alleged Co-conspirators' Statements (the "2d

17

MIL") [Docket Nol. 75]

18

(4)     The government's Motions in Limine (the "Gov MIL") [Docket No. 77];

19

(5)     Chaudry's Motions in Limine (the "CMIL") [Docket No. 102];

20

(6)     Chaudry's Motion for a Jury Questionnaire [Docket No. 107];

21

(7)     Kahn's Joinder in Defendant Chaudhry's Motion In Limine (Docket No. 102)

22

[Docket No. 108];

23

(8)     The government's Motion in Limine to Exclude Public Authority Defense [Docket

24

No. 110];

25

(9)     The government's Motion in Limine Regarding Witness Janet Appelton (the

26

"GMIL2") [Docket No. 111];

27

(10)    Chaudry's Supplemental Motion in Limine (the "SMIL") [Docket No. 114];

28

(11)    Kahn's Joinder in Defendant Chaudhry's Additional Motions in Limine (Docket

No. 114) [Docket No. 116];

(12)     The government's Memorandum in Opposition (the "Gov. Opp'n") [Docket No. 118];

(13)     The government's Opposition to Motion (the "MTR Opp'n") [Docket No. 109];

(14)     The government's Memorandum in Opposition (the "2d MIL Opp'n") [Docket No. 117];

(15)     Chaudry's Memorandum In Opposition to Government's Motion to Preclude Public Authority Defense [Docket No. 113];

(16)     Chaudry's Memorandum in Opposition to Government's Motion regarding Janet Appleton (the "COpp'n") [Docket No. 112];

(17)     The government's Memorandum in Opposition (the "SOpp'n") [Docket No. 120];

(18)     Kahn's Reply to Response to Motion for Reconsideration of Motion To Sever (the "MTR Reply") [Docket No. 115];

(19)     Kahn's Reply to Response (the "2d MIL Reply") [Docket No. 139];

## BACKGROUND

On October 23, 2003, defendant Mohammad Yousef Chaudhry and defendant Ali H. Kahn were charged in an eighteen-count indictment.

### A.    Chaudry's Individual Counts

Defendant Chaudry was charged with five counts of violating 26 U.S.C. § 7206(1), subscribing to a false tax return.  Under this section, it is illegal if a person "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter[.]"  26 U.S.C. § 7206(1); *United States v. Marabelles*, 724 F.2d 1374, 1380 (9th Cir. 1984) (discussing elements).

The Government alleges from 1999 through 2001, Chaudry was president of RT Computers ("RT") and Alternate Energy Systems ("AES"), which entities received approximately $7.1 million in gross receipts during this time.  The Government also alleges from 1999 through 2002, Chaudry signed five corporate tax returns for these entities, in which he declared their gross receipts were

2

1    approximately only $2 million.

2        **B.    Chaudry's and Kahn's Joints Counts**

3        In addition to Chaudhry's separate counts, he and Kahn are together charged with 11 counts

4    of violating 31 U.S.C. § 5324(a)(3)[1] which prohibits structuring or assisting in structuring any

5    transaction with one or more domestic financial institutions to avoid the reporting requirements of

6    31 U.S.C. § 5313(a)[2] or § 5325[3] or related laws or regulations, or attempting to engage in these acts;

7    1 count of conspiracy, under 18 U.S.C. § 371; and 1 count of criminal forfeiture, under 31 U.S.C.

8    5317(c)(1)(A).

9        The elements of structuring a transaction for the purpose of evading a reporting requirement

10   are:  (1) the defendant had knowledge of the transaction reporting requirements; (2) the defendant

11   knowingly structured or attempted to structure a currency transaction; (3) the purpose of the

12   structured transaction was to evade the currency transaction reporting requirements of § 5313(a) or

13   regulations prescribed thereunder; and (4) the structured transaction involved one or more domestic

14   financial institutions.

15       The elements of conspiracy are:  (1) an agreement between two or more persons to commit at

16   least one crime charged in the indictment; (2) a person became a member of the conspiracy knowing

17   of at least one of its objects and intending to help accomplish it; and (3) one of the members of the

18

19   _____

     [1]    This section states:

20           *(a) Domestic coin and currency transactions involving financial*
         *institutions.*--No person shall, for the purpose of evading the reporting requirements

21       of section 5313(a) or 5325 or any regulation prescribed under any such section, the
         reporting or recordkeeping requirements imposed by any order issued under section

22       5326, or the recordkeeping requirements imposed by any regulation prescribed under
         section 21 of the Federal Deposit Insurance Act or section 123 of Public Law

23       91-508--
                 ....

24                   (3) structure or assist in structuring, or attempt to structure or assist in
         structuring, any transaction with one or more domestic financial institutions.

25   [2]    This section requires domestic financial institutions to report certain types of cash

26   transactions exceeding certain limits to the government.  Defendants allegedly violated this section.
     Indictment ¶ 17.

27   [3]    This section bars domestic financial institutions from issuing or selling a bank check,

28   cashier's check, traveler's check, or money order of $3,000 or more without certain forms of
     identification.  This section is not at issue in this matter.

1   conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

2        The government alleges from 1999 through 2001, Chaudhry and Khan structured

3   approximately $2 million worth of payments to RT and AES to avoid reporting requirements.

4   Chaudhry allegedly asked customers to break up payments into multiple checks, less than a $10,000

5   trigger-amount for reporting.  The government also alleges Khan was involved in Chaudhry's

6   businesses and participated in structuring activities, including negotiating or cashing approximately

7   160 "structured" checks allegedly worth hundreds of thousands of dollars.  The government also

8   alleges Khan did not endorse the checks with his true name, but tried to conceal his involvement by

9   signing another employee's name, signing illegibly, or signing a fragment of his name.  It further

10   alleges Chaudhry and Kahn did not cash the checks at a bank, but at a convenience store, paying a

11   fee of approximately 2.5% for each check.

12        With regards to the criminal forfeiture count, section 31 U.S.C.A. § 5317(c)(1)(A) provides,

13   "[t]he court in imposing sentence for any violation of section 5313, 5316, or 5324 of this title, or any

14   conspiracy to commit such violation, shall order the defendant to forfeit all property, real or

15   personal, involved in the offense and any property traceable thereto."[4]

16        **C.    Uncharged Acts**

17        In its Memorandum in Opposition [Docket No. 118], a consolidated opposition to

18   defendants' motions in limine, the government alleges other conduct by defendants, beyond that

19   charged in their indictment.  Essentially, the government alleges, Chaudry used RT and AES to

20   make cash purchases of pallets of software, such as Microsoft Office, at a discount, as it was either

21   stolen or purchased for re-sale to special classes of users, such as educational institutions.  Gov.

22   Opp'n at 2.  RT and AES employees then allegedly prepared the stolen software for sale, or replaced

23   any stickers indicating the software was for sale only to special classes of users with general use

24   stickers.  *Id.*  RT and AES then sold the software at general market prices.  *Id.*  Allegedly, Kahn

25   helped deliver it.  *Id.*

26

27   ―――――――――――――――――

28   [4]    Section 31 U.S.C. § 5317(c)(1)(B) provides the process:  "Forfeitures under this paragraph shall be governed by the procedures established in section 413 of the Controlled Substances Act." This is codified at 21 U.S.C.A. § 853.

4

1    Customers allegedly paid for the software, as already discussed, with checks broken down

2   into amounts below $10,000.  *Id.*  Kahn and other employees then cashed these checks at currency

3   exchanges.[5]  *Id.*  The government alleges Kahn cashed more than 150 checks, and Chaudry cashed

4   many more, though only a portion are charged in their indictment.  *Id.*

5    Beginning in late 2000, defendants began filing false currency transaction reports or CTR's

6   with the IRS claiming checks received by RT and AES in 1999 and 2000 for product were actually

7   currency transactions, because RT and AES were actually currency exchanges.  *Id.* at 2-3.   The

8   government claims while all the CTR's were filed in Chaudhry's name, handwriting analysis has

9   determined Kahn completed several of them.  *Id.* at 3.

10   **D.    Alleged Defenses**

11    The government alleges Chaudry and Kahn will argue RT and AES were in fact currency

12   exchanges, and thus, while these entities did take in large sums of money, they only retained a small

13   amount of money as check cashing fees, while remitting the remainder to the cashing party.  *Id.* at 2-

14   3.  The government alleges that Kahn will claim he was just Chaudry's employee, following his

15   instructions, and knew nothing of his allegedly illegal conduct.  *Id.* at 3.

16

17    **LEGAL STANDARD**

18   **I.    Rules 401 through 403**

19    "'Relevant evidence' means evidence having any tendency to make the existence of any fact

20   that is of consequence to the determination of the action more probable or less probable than it

21   would be without the evidence."  Fed. R. Evd. 401.  "All relevant evidence is admissible, except as

22   otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or

23   by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is

24

25   ──────────────

26   [5]    The government also alleges, in connection with this conduct, that some of the exchange
    cashers agreed not to report transactions of $10,000 or more, and Kahn filed false currency
    transaction reports with the IRS.  Gov. Opp'n at 2.  Although the government does not explain in its

27   opposition why defendants would need cashers to do this if they were cashing checks under $10,000,
    in it motions in limine, it explained that some customers refused to break up their purchases into

28   multiple checks, each for less than $10,000.  Docket No. 77 at 2:21-22.  Thus, defendants needed
    check cashers to handle these large checks without completing CTRs.  *Id.*

not relevant is not admissible." *Id.* 402.  Nonetheless, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* 403.

### A. Willfulness

In the criminal tax context, willfulness is the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991); *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1992). "Bad purpose" or "evil motive" is not part of the equation. *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Kelley*, 539 F.2d 1199,1204 (9th Cir. 1976). Since direct proof of a defendant's state of mind is rarely available, circumstantial evidence and inferences drawn therefrom typically establish willfulness. *United States v. Woodley*, 9 F.3d 774, 779 (9th Cir. 1993); *United States v. Claiborne*, 765 F.2d 784, 797 (9th Cir. 1985), *abrogation on other grounds recognized by U.S. v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995); *United States v. Conforte*, 624 F.2d 869, 875 (9th Cir. 1980).

Examples of circumstantial evidence that are admissible to show willfulness include:

- A consistent pattern of underreporting large amounts of income. *United States v. Kim*, 884 F.2d 189, 192 (5th Cir. 1989).

- False statements to agents, whether made by defendant or instigated by him or her. *United States v. Pistante*, 453 F.2d 412 (9th Cir. 1971).

- Repetitious omissions of items of income. *Sherwin v. United States*, 320 F.2d 137, 140-141 (9th Cir. 1963).

- Extensive use of cash. *See United States v. Soulard*, 730 F.2d 1292, 1304-05 (9th Cir. 1984) (affirming instruction that jury may consider extensive use of cash with respect to intent).

- A defendant's filing history both before and after the years in question. *United States v. Farris*, 517 F.2d 226, 229 (7th Cir. 1975) (no error in admitting evidence regarding the years immediately prior to and subsequent to the years at issue); *see also United States v. Ayers*, 924 F.2d 1468, 1473-74 (9th Cir. 1991) (admitting evidence of subsequent acts in tax evasion and conspiracy case as acts occurred within two years of filing charges, and were similar to conduct leading to

conspiracy charge); *United States v. Turk*, 722 F.2d 1439, 1441 (9th Cir. 1983) (en banc) (failure to file income tax returns in two prior years admissible to show intent); *United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981) (in tax evasion case, ruling that defendant's subsequent conduct "had the 'likely effect' of misleading and concealing" and was therefore probative of defendant's willfulness); *United States v. Buras*, 633 F.2d 1356, 1359 (9th Cir. 1980) (defendant's filing of tax returns for eight years prior to years in question illustrated he understood his legal obligation to file returns and was thus admissible to prove willfulness); *United States v. Snow*, 529 F.2d 224, 225 (9th Cir. 1976) (per curiam) (defendant's failure to file income tax returns in six years preceding years in question was probative of willfulness).

● The absence or destruction of documents supporting the information in the tax return. *See United States v. Holovachka*, 314 F.2d 345, 358 (7th Cir. 1963) (defendant's "statement that the records disclosing the source of this substantial amount of currency were lost. . . . was a factor to be considered by the jury on the issue of willfulness."); *Gariepy v. United States*, 189 F.2d 459, 463 (6th Cir. 1951) (evidence pertinent books' and records' destruction relevant to willfulness).

● A defendant's professional experience. *See United States v. Smith*, 890 F.2d 711, 715 (5th Cir. 1989) ("taxpayer's acumen as an entrepreneur" relevant to willfulness).

● Filing a false return. *Marabelles*, 724 F.2d at 1380.

## II.    Rule 404(b)

Rule 404(b) states:

> (b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

7

Rule 404(b) is a rule of inclusion. *United States v. Rrapi*, 175 F.3d 742, 748 (9th Cir. 1999). Unless the evidence of other crimes tends only to prove propensity, it is admissible. *Id.* To admit evidence under Rule 404(b), the Ninth Circuit employs a four-part test: (1) sufficient evidence must exist for the jury to find the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged. *United States v. DeSalvo*, 41 F.3d 505, 509 (9th Cir. 1994) (citing *Ayers*, 924 F.2d at 1473).

## III.    "Inextricably Intertwined" Evidence of Other Acts

"Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense." *United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). This exception may be triggered in one of two ways.

First, it applies when other-acts "evidence ... constitutes a part of the transaction that serves as the basis for the criminal charge." *Vizcarra-Martinez*, 66 F.3d at 1012. Thus, in *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993), the Ninth Circuit "concluded contemporaneous sales of cocaine and crank by the defendant were inextricably intertwined with the crime with which the defendant was charged: the sale of cocaine." *Vizcarra-Martinez*, 66 F.3d at 1012. As noted in *Williams*, "[t]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.' " *Id.* (quoting *Williams*, 989 F.2d at 1070 (quoting *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987))).

Second, the exception applies when "other act" evidence is necessary:

to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime. This exception to Rule 404(b) is most often invoked in cases in which the defendant is charged with being a felon in possession of a firearm.

1   *Vizcarra-Martinez*, 66 F.3d at 1012-13.

2   In these cases, other-acts evidence is not character evidence, but " 'direct evidence,' used to flesh

3   out the circumstances surrounding the crime with which the defendant has been charged, thereby

4   allowing the jury to make sense of the testimony in its proper context." *United States v.*

5   *Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992).

6

7                                        **ANALYSIS**

8   **I.    Kahn's Motion in Limine to Exclude Evidence Relating to Other Alleged Crimes and**

9          **Bad Acts ("MIL") [Docket No. 73].**

10         In his MIL, Kahn argues the government will introduce evidence of uncharged conduct,

11  which the Court should exclude under Rules 403 and 404(b).  The Court holds as follows.

12         **A.    Kahn failed to provide sufficient information for the Court to determine the**

13                **inadmissibility of Chaudry's failure to file tax returns or his tax deficiencies.**

14         The Court DENIES without prejudice Kahn's request to exclude this evidence under

15  Rule 404(b) and 403.  In an August 12, 2006 letter to defendants' counsels (the "Letter"), the

16  government advised it would seek to present evidence of Chaudry's failure to file taxes for himself

17  and his business, in years other than those covered in the indictment.  MIL, Ex. "A" at 1.  Further, it

18  advised it would seek to present evidence regarding his tax deficiencies in years prior to those

19  charged in the indictment.  *Id.*  It also advised this evidence would show Chaudry's willful intent to

20  evade tax laws, his knowledge of them, and his motive for failing to report income.  *Id.*  And, the

21  government noted defendants' counsels had received extensive discovery regarding these matters,

22  beyond what their clients already had.  *Id.*  In his MIL, Kahn argues the government is improperly

23  attempting to avoid Rule 404(b) by incorrectly claiming these acts are evidence of willfulness or

24  intent, or part of a common plan or scheme.

25                      **1.    Willfulness or Intent**

26         In his MIL, Kahn fails to provide sufficient information for the Court to determine whether

27  evidence of Chaudry's failure to file tax returns or his tax deficiencies is admissible to show

28  willfulness or intent.  Kahn argues the government could use Chaudry's failure to file tax returns to

prove Chaudry willfully *failed to file* tax returns, in violation of 26 U.S.C. § 7201, but not to prove he willfully filed *a false* tax return.  MIL at 7:6-15.  Likewise, he argues, Chaudry's tax deficiencies are not probative on the issue of whether or not Chaudry willfully subscribed a false return.  *Id.* at 7:15-17.  Instead, he argues, this evidence merely paints Chaudry as a "tax cheat," in violation of Rule 404(b).  *Id.* at 7:15-17.  Kahn provides no legal support for his argument.

In contrast, the government notes the Ninth Circuit, in *Marabelles*, 724 F.2d at 1380, held evidence which allows a jury to reasonably infer a defendant willfully evaded taxes, such as the filing of a false tax return, could also allow it to reasonably infer that defendant willfully subscribed false returns.  Gov. Opp'n at 4:27-28.  Thus, there is no per se rule barring juries from considering evidence which supports a finding of willful evasion from also considering it to support a finding of willful false subscription.  Nonetheless, Kahn fails to indicate when or how many times Chaudry failed to file tax returns, or when, how often, and to what extent he had tax deficiencies.  Without this information, the Court cannot determine that such evidence is inadmissible.

### 2.    Common Plan

In his MIL, Kahn fails to provide sufficient information for the Court to determine whether evidence of Chaudry's failure to file tax returns or his tax deficiencies is admissible to show a common plan or scheme.  Kahn argues the government could use Chaudry's failure to file tax returns to prove Chaudry engaged in a scheme or plan to not file tax returns in other years, but not to prove he engage in a scheme or plan to falsely subscribe them.  MIL at 7:22-24.  Kahn argues these alleged prior bad acts are insufficiently similar to the charged conduct to make them admissible under Rule 404(b).  *Id.* at 7:24-8:2.  Again, however, because Kahn fails to provide any specific information about the uncharged conduct, the Court cannot determine how similar or dissimilar it is to the charged conduct.

### 3.    Rule 403

Kahn lastly argues, even if the Court found evidence of Chaudry's failure to file tax returns or his tax deficiencies were admissible under Rule 404(b), the Court should exclude such evidence under Rule 403, as unduly prejudicial to him.  *Id.* at 8:7-10.  As the Court has not ruled the evidence admissible or inadmissible, it need not reach Kahn's third argument.

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.    Conclusion

Because Kahn failed to provide sufficient information for the Court to determine the inadmissibility of Chaudry's failure to file returns or his tax deficiencies, the Court DENIES without prejudice Kahn's motion to exclude this evidence under Rule 404(b) and 403.  If this becomes an issue at trial, it may be addressed at that time.

**B.    Kahn failed to provide sufficient information for the Court to determine the inadmissibility of the Appelton audit under Rules 403 or 404(b); and, he failed to provide sufficient information for the Court to determine the inadmissibility of defendants' dealings with check cashers, customers, or cashed checks, under Rule 403.**

In the Letter, the government advised defendants' counsels it would seek to introduce evidence regarding an audit of Chaudry and his businesses, performed by Janet Appelton, as it would tend to show Chaudry's willful intent to evade tax laws, his knowledge of them, and his motive for failing to report income.  MIL, Ex. "A" at 1.  The government also advised it would seek to offer evidence regarding (1) defendants' dealings with check cashers for RT and AES, (2) payments from RT's and AES' software customers, and (3) checks written to RT and AES and cashed by defendants, none of which had been charged in the indictment.  *Id.* at 2.  The government advised this evidence was inextricably intertwined with the charged conduct, was  probative on the conspiracy count, and detailed in provided or pending discovery.  *Id.*

In his MIL, Kahn argues this evidence is inadmissible under Rule 403, as it would confuse the jury, prejudice him and Chaudry, and unduly delay the trial.  MIL at 9:6-10.  With regards to prejudice, Kahn argues the government seeks to introduce "vast amounts of unrelated evidence" to "poison the jury with inadmissible character evidence," most of which pertains to Chaudry.  *Id.* at 9:12-15.  He also argues he and Chaudry should only have to answer for their charged offenses.  *Id.* at 9:15-16.  And, he argues, if he is forced to address these irrelevant bad act at trial, he will be unduly prejudiced.  *Id.* at 9:16-18.

Shifting gears, Kahn argues the jury will have be confused by all the extra witnesses, including check cashers and customers, and extra information, such as check cashing locations and

1    check numbers, the government will have to present if it delves into these areas of uncharged

2    conduct. *Id.* at 9:19-22. He also argues the jury should only have to focus on evidence supporting

3    the charged crimes, and not on evidence inadmissible under Rules 403 or 404(b).[6] *Id.* at 9:22-25.

4    And, he argues, this uncharged evidence would delay the trial by an exorbitant amount of time

5    because the government would have to introduce it, then the Court would have to make sure the jury

6    understood which evidence related to which charged offenses, or related to no charged offenses, or

7    related to which defendant(s), and issue repeated limiting instructions to all these effects and to

8    minimize prejudice. *Id.* at 9:10:1-7.

9                              **1.    Appelton Audit**

10         With regards to the audit, Kahn provides no information at all regarding it. Thus, the Court

11   cannot determine whether it is inadmissible, and DENIES his request to exclude it.

12                         **2.    Dealings with Check Cashers**

13         The government argues this uncharged evidence is admissible as inextricably intertwined

14   evidence, and/or under Rule 404(b), and under Rule 403. The Court agrees with the government,

15   except that because neither Kahn nor the government indicate how many witnesses will testify or

16   when they cashed checks, the Court cannot determine whether this evidence is inadmissible under

17   Rule 403. Thus, the Court DENIES Kahn's request to exclude under Rule 404(b), but DENIES

18   without prejudice his request to exclude it under Rule 403.

19                    **a.    Inextricably Intertwined Conduct**

20         The government argues evidence of uncharged dealings with check cashers is admissible

21   because it is inextricably intertwined with the charged conduct. The government first notes the

22   indictment charges only a *representative sample* of the illegal conduct engaged in by defendants as

23   part of a *continuing course of criminal conduct*. Gov. Opp'n at 19:25-26. It then argues the Ninth

24   Circuit has expressly held other instances of conduct that are part of the same criminal scheme are

25   admissible as *inextricably intertwined* with the charged conduct, citing *United States v.*

26   *Montgomery*, 384 F.3d 1050, 1061-62 (9th Cir. 2004) (evidence of 1,006 instances of mail fraud

27   _____

28   [6]    This apparently is Kahn's way of also raising Rule 404(b) as an objection to this uncharged
     evidence.

                                          12

admissible as "inextricably intertwined" with 1 conspiracy count and 19 counts of mail fraud where each instance was part of the conspiracy); *United States v. Sayakhom*, 186 F.3d 928, 938-39 (9th Cir. 1999) (evidence admissible of continuing scheme to defraud an entity other than that charged in the indictment); *United States v. Serang*, 156 F.3d 910, 915 (9th Cir. 1998) (government not precluded from introducing evidence relevant to entire conspiracy or scheme simply because a defendant is indicted for less than all of their actions.); *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir. 1989) (where defendant charged with scheme to defraud one travel agency, evidence was admissible regarding ten other agencies to which scheme extended).  Gov. Opp'n at 19:28-20:2.

The government also argues the check cashers' testimony regarding discussions they had with Chaudhry regarding the CTR requirements and his intention to evade them are directly relevant to defendants' motivation in structuring the currency transactions.  *Id.* at 19:2-5.  Thus, it argues, such conversations are necessary to prove an element of the charged conduct:  the defendants' purpose in breaking down larger checks into smaller ones to evade the filing of a CTR.  *Id.* at 19:5-7.  As such, it argues this evidence is admissible as inextricably intertwined conduct.  *Id.* at 19:7-8.

### b.     Rule 404(b)

The government also argues evidence of uncharged dealings with check cashers is admissible under Rule 404(b) because it shows motive, intent, knowledge, plan, and absence of mistake or accident.  It notes the cashers will testify regarding uncharged transactions, which are identical to the charged transactions, and which occurred either contemporaneously with them or within a short time before or after them.  *Id.* at 20:11-14.  Also it notes the actual checks involved will be admitted into evidence.  *Id.* at 20:13.  Thus, the government argues this evidence of uncharged conduct is admissible under Rule 404(b).

### b.     Rule 403

The government argues evidence of uncharged dealings with check cashers is admissible under Rule 403, because its probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or undue delay.  The government argues this evidence is minimally prejudicial as it would not introduce the jury to any facets of defendants' character with which they would not already be familiar.  *Id.* at 20:19-21.  On the other hand, it argues, this evidence is highly probative

of the entire scope of the conspiracy between defendants, their plan, motivations, intent, and knowledge, and lack of mistake or accident. *Id.* at 20:21-23. Therefore, it argues, the balance under Rule 403 weighs in favor of admissibility. *Id.* at 20:23-24.

### c.     Conclusion

The Court rules the evidence is admissible as inextricably intertwined conduct and under Rule 404(b), but that its admissibility is indeterminate under Rule 403. The uncharged dealings with cashers are inextricably intertwined with the charged conduct, in that the former are not merely further examples of the latter but also show both a common course of conduct and provide the jury with context. Also, under Rule 404(b), the greater frequency of illegal conduct suggests planing, knowledge, intent, *et seq.* on defendants' part, that makes it difficult for them to argue their conduct was mistaken or accidental.

With regards to Rule 403, however, while the evidence is highly probative, neither side has indicated how many witnesses would testify, when they dealt with defendants, or how redundant their testimony would be. Thus, the Court cannot accurately gauge possible prejudice, jury confusion, or delay, or to what extent limiting instructions would be effective in addressing these issues. As such, the Court DENIES Kahn's request to exclude this evidence under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule 403.

### 3.     Dealings with Customers

The Court DENIES Kahn's request to exclude this evidence under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule 403. The analysis here is the same as for determining the admissibility of uncharged dealings with check cashers in part I.B.2, *supra*. In its Opposition, the government advises it will seek to have customers who paid for software testify at trial, and it will seek to introduce their actual checks and invoices into evidence, to document payments made to RT and AES during and close to the same time the payments charged in the indictment were made. *Id.* at 15:9-14. Just as with the uncharged dealings with check cashers, this evidence is admissible as inextricably intertwined conduct and under Rule 404(b), and it is probative under Rule 403. Nonetheless, the parties fail to provide specific information regarding how many witnesses would testify, when they dealt with defendants, or how redundant their testimony would

14

be.  Thus, the Court cannot accurately gauge possible prejudice, jury confusion, or delay, or to what extent limiting instructions would be effective in addressing these issues.

### 4.     Cashed Checks

The Court DENIES Kahn's request to exclude this evidence under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule 403.  The analysis here is the same as for determining the admissibility of uncharged dealings with check cashers in part I.B.2, *supra*.  In its Opposition, the government advises it will seek to introduce into evidence checks cashed during and close to the same time the checks charged in the indictment were cashed.  *Id.* at 13:24-27.  Just as with the uncharged dealings with check cashers, this evidence is admissible as inextricably intertwined conduct and under Rule 404(b), and it is probative under Rule 403.  Nonetheless, the parties failed to provide specific information regarding how many checks would be admitted, or when they were cashed, or how redundant this evidence would be.  Thus, the Court cannot accurately gauge possible prejudice, jury confusion, or delay, or to what extent limiting instructions would be effective in addressing these issues.

### C.     Evidence of the illegal software business is admissible as inextricably intertwined conduct and under Rules 404(b) and 403.

The Court DENIES Kahn's request to exclude this evidence.  In the Letter, the government advised it would seek to introduce evidence regarding "defendants' trade in 'grey-market' or counterfeit software[.]"  MIL, Ex. "A" at 2.  Kahn argues the Court should exclude this evidence under Rules 404(b) and 403.  The government argues this evidence is admissible as inextricably intertwined conduct, under Rule 404(b), and under Rule 403.

### 1.     Inextricably Intertwined Conduct

The Court holds evidence of the illegal software business is admissible as inextricably intertwined with the charged conduct.  In his MIL, Kahn argues the government seeks to introduce this evidence on the grounds it is inextricably intertwined with the check cashing and the filing of false tax returns.  MIL at 10:18-20.  To make this showing, Kahn argues, *Vizcarra-Martinez*, 66 F.3d at 1012, requires the government to allege the illegal software business was the "principal motivation for the alleged crimes."  MIL at 10:20-22.  As it has not, he claims this evidence must be

excluded under Rule 404(b).  *Id.* at 10:22-24.  The Court holds this argument fails, as *Vizcarra-Martinez* does not hold as Kahn argues.[7]  Nonetheless, the government did allege as Kahn requested, in opposing his argument on the merits, and its arguments are reviewed here, as they are directly relevant for addressing Kahn's Rule-403 argument, *see* part I.C.3 *infra*.

The government argues evidence of the illegal software business is admissible as inextricably intertwined with the charged conduct, as it provides background and context, establishes the witnesses' relationships with defendants, and refutes defendants' defenses.

With regards to the first concept, the government evidence of the illegal software business is necessary to provide the jury with the entire background for, and the context in which, the charged crimes occurred.  Gov. Opp'n at 8:22-24.  It notes in *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999), testimony explaining the general nature of a defendant's business activity was admitted as "direct evidence 'inextricably intertwined' with evidence of the crime charged."  As it argues here, one of defendants' primary motivations and impetuses for committing the charged crimes was to hide RT's and AES' illegal activities.  *Id.* at 8:24-28.  In essence, the government argues, RT and AES sold stolen or special-market software at general market prices, requested payment in checks for less than $10,000, then cashed them at currency exchanges, to buy more software.  *Id.* at 9:11-22.  Defendants thus avoided the CTR requirements so the businesses could underreport their income and hide their illegal activities.  *Id.* at 9:22-25.  Thus, under *King*, the government argues evidence of the illegal software business is admissible as inextricably intertwined background and context information.

Further and likewise, the government argues evidence of the illegal software business is admissible under *Beckman*, 298 F.3d at 793-94, where the Ninth Circuit allowed in "inextricably intertwined" evidence which explained the relationship between witnesses and defendant, as it provided the jury with a "coherent and comprehensive story."  Here, the government argues, many of its witnesses were partners in or victims of defendants' illicit sales activities, and evidence concerning the context in which they were doing business with them will be necessary to explain

---

[7]     Its holding are discussed at Legal Standard part III, *supra*.

16

both their relationships and the actions and events to which they will testify. Gov. Opp'n at 9:1-5. Thus, the government argues, evidence of the illegal software business is admissible as inextricably intertwined with the charged conduct, under *Beckman*, as it explains its witnesses' relationships with the defendants.

Lastly, the government notes, the court in *Beckman*, 298 F.3d at 794, also allowed in "inextricably intertwined" evidence which refuted a defendant's claim of lack of intent or knowledge. Gov. Opp'n at 9:6-10. In this case, the government argues, the illegal cash-based business provides the motivation, explains the plan, illuminates defendants' intent and knowledge, and explains away any defenses of mistake or accident, for the charged crimes. *Id.* at 10:1-5 (citing *United States v. Kallin*, 50 F.3d 689, 696 (9th Cir 1995) (uncharged fraud on corporate tax returns admitted to explain intent and plan regarding charged fraud on personal tax return)). Also, it argues Kahn has claimed he was just an innocent employee of Chaudry's, and Chaudry has claimed RT and AES were merely currency exchanges. Gov. Opp'n at 10:6-8, 14-16. To counter this, government's witnesses will testify to the pervasiveness of illegal conduct at RT and AES, including the shared warehouse for these businesses was filled with illegal software and the practice of repackaging the software using illegally obtain stickers and seals was open and notorious. *Id.* at 10:8-12. Thus, the government argues, evidence of the illegal software business is admissible as inextricably intertwined with the charged conduct, under *Beckman*, as it refutes defendants' defenses.

## 2.    Rule 404(b)

The government also argues, even if evidence of the illegal software business were not inextricably intertwined, it would be admissible under Rule 404(b) because it meets the four requirements for admissibility under that rule: (1) as discussed in part I.C.1 *supra*, it explains the motive, opportunity, plan, intent, knowledge, and lack of mistake or accident of the defendants in committing the crimes charged in the indictment; (2) it occurred at the same time as the charged conduct; (3) witnesses who directly participated in the criminal activity with the defendants will testify regarding their actions; and (4) although it will be used to show motive, plan, *et seq.*, to the extent it were used to show intent, both the charged and uncharged conduct are similar in that they relate to defendants' intent to defraud either the United States government or their customers and

1    suppliers.  Gov. Opp'n at 10:26-11:5.

2                        **3.    Rule 403**

3         Kahn argues even if the Court holds evidence of the illegal software business admissible as

4    inextricable conduct or under Rule 404(b), the Court should exclude it under Rule 403.  First, Kahn

5    argues if this evidence is probative as to any charged conduct, it is only probative as to Chaudry's

6    activities, as there is no evidence he, Kahn, was involved in the "counterfeit software trade."  MIL at

7    10:25-11:2.  Further, he argues, any evidence of such a trade would "resonate" with the jurors

8    leading them to convict for reasons related to uncharged criminal activity.  *Id.* at 11:4-6.

9    Specifically, he is concerned a jury would erroneously wrap him into Chaudry's illegal acts, solely

10   as his employee.[8]  *Id.* at 11:9-12.

11        As the government notes, in *Ramirez-Jiminez*, 967 F.2d at 1327, the Ninth Circuit held that

12   under Rule 403, the probative value of testimony is measured under Rule 401.  In turn:

13            [t]he unfair prejudice is measured by the extent to which the testimony "makes

14            conviction more likely because it provokes an emotional response in the jury or

15            otherwise tends to affect adversely the jury's attitude toward the defendant wholly

16            apart from its judgment as to his guilt or innocence of the crime charged."

17   *Id.* (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982)).

18   In contrast, the Ninth Circuit held, an "other act" is admissible where it "is not the sort of conduct

19   which would provoke a strong and unfairly prejudicial emotional response from the jury.  [But] is

20   prejudicial only to the extent that it tends to prove the fact justifying its admission ...."

21   *Ramirez-Jiminez*, 967 F.2d at 1327.

22        Here, the government argues, evidence regarding the illegal software business would not

23   provoke a strong and unfairly prejudicial emotional response from the jury.  Gov. Opp'n at 11:9-11.

24   It would merely establish a basis for why Chaudry and Kahn were breaking up their customers'

25

26   _____

     [8]    For support, Kahn cites to *U.S. v. Figueroa*, 618 F.2d 934, 945-47 (2d Cir. 1980).  MIL
27   at 11:14.  *Figueroa*, however, dealt with a prior criminal act which only pertained to one of three
     defendants, and which the Second Circuit determined was inadmissible against that one defendant
28   and unfairly prejudicial to the other two defendants.  No such inadmissible conduct is at issue here.
     Nonetheless, although *Figueroa* does not support him, Kahn's concern is still reasonable.

1   payments into checks below $10,000, cashing them at currency exchanges, then not reporting the

2   income to the IRS.  *Id.* at 11:20-12:1.  Likewise, the government argues, it would refute Chaudry's

3   defense he was running currency exchanges, and Kahn's defense he knew nothing of any illegal

4   activities regarding any software or CTRs.  *Id.*

5                    **4.     Conclusion**

6            The Court holds evidence of the illegal software business is admissible as inextricably

7   intertwined conduct and under Rules 404(b) and 403.  The Court thus DENIES Kahn's request to

8   exclude this evidence these rules.

9   **II.     Kahn's Motion in Limine for Reconsideration of Defendant Khan's Motion for**

10          **Severance (the "MTR") [Docket No. 74]**

11          On September 14, 2004, Kahn filed a Motion to Sever Defendants (the "MTS") [Docket

12  No. 29].  On November 30, 2004, the Court denied this motion.  *See* Docket No. 39 (Min. Order).

13  On August 22, 2006, Kahn filed his MTR requesting the Court to reconsider its denial.  *See* Docket

14  No. 74.  For the following reasons, the Court denies the MTR.

15          Under Federal Rule of Criminal Procedure 57(a)(1) and Criminal Local Rule 2-1, the Court

16  may apply consistent Civil Local Rules as needed.  Under Civil Local Rule 7-9(a) a party desiring to

17  file an interlocutory motion for reconsideration must first obtain leave of court.  Further, under Local

18  Rule 7-9(b) a moving party must show (1) a material difference between the facts or law presented

19  to the Court, and the actual state of the facts or the law, at the time prior to the Court issuing the

20  challenged order, which were not discoverable with reasonable diligence; (2) new material facts

21  discovered or a change in the law after the challenged order; or (3) "[a] manifest failure by the Court

22  to consider material facts or dispositive legal arguments which were presented to the Court before

23  such interlocutory order."  Lastly, under Local Rule 7-9(c), a movant who repeats prior arguments

24  may be subject to sanctions.

25          In this case, the Court should deny the MTR as Kahn failed to seek leave of Court before

26  filing it.  In addition, the Court should deny it because Kahn merely repeats the same four arguments

27  he made in his MTS, but in a different order.  Thus, in his MTR, Kahn first argues the Court should

28  sever because he will be denied access to Chaudry's exculpatory testimony, citing *United States v.*

*Vigil*, 561 F.2d 1316 (9th Cir. 1977) and *Seifert v. United States*, 648 F.2d 557 (9th Cir. 1980). MTR at 5-6.  This is the same argument Kahn made in his MTS, MTS at 17-18, and he cites no newly discovery "old" facts or law, no new facts or law, nor any manifest error justifying reconsideration.

Second, Kahn argues the Court should sever under Federal Rule of Criminal Procedure 14, citing to *United States v. Donaway*, 447 F.2d 940 (9th Cir. 1971) and *Kotteakos v. United States*, 328 U.S. 750 (1946).  MTR at 7, 9.  He cited these cases in his MTS.  MTS at 11-12.  In the MTS, Kahn argued without severance, he would suffer prejudice due to evidence, including "thousands of pages of documents" which address the illegal tax fraud of co-defendant Chaudry, president of RT and AES.  *Id.* at 10-11.  Kahn argued he was just a receptionist and a "runner," who was asked to cash a few checks, but the jury would convict him by association with Chaudry, even though he knew nothing about any tax fraud.  *Id.*  The only change now is Kahn argues more evidence has been produced, most of which deals with Chaudry's tax fraud and the illegal software business, so now the disparity in evidence targeting the defendants is greater, than when the Court denied his MTS.  MTR at 8-9.

Kahn has failed to show new facts justifying reconsideration.  First, Kahn's relief depends on the Court accepting his allegations he knew nothing of any illegal conduct.  This is not the proper posture for seeking severance or reconsideration.  Second, the Court already denied the MTS, because the false subscription charges will not prejudice Kahn's trial on the joint charges.  Rather clearly, it is not necessary for the jury to find Chaudry falsely subscribed tax returns to find he and Kahn structured cash transactions to avoid CTR requirements.  Thus, Kahn can easily distance himself from any fraud subscription evidence.  Third, Kahn states since the Court denied his MTS, evidence has been produced regarding the illegal software business, which conduct was not at issue when he filed his MTS.  In part I.C, *supra*, however, in considering Kahn's MIL, the Court found evidence of this uncharged conduct would not prejudice Kahn's trial.  Thus, there is no need to sever on this basis.  And, as to his second argument, Kahn has failed to persuade the Court to reconsider its prior decision.

Kahn's third reason for severance is he is mis-joined under Federal Rule of Criminal

Procedure 8. Kahn's argument runs for almost two pages. See MTR at 10-11. Page 10 is almost verbatim the same as the first page of the Rule-8 argument in his MTS. *See* MTR at 10; MTS at 5. The only new development in the MTR is Kahn cites to *United States v. Lane*, 735 F2d 799 (5th Cir. 1984), *affirmed in part, reversed in part on other grounds, by U.S. v. Lane*, 474 U.S. 438 (1986). MTR at 11. Kahn fails to explain, however, how this Fifth Circuit case from 1984 is a new legal development, or unbeknownst to him or the Court was the "state of the law" in 2004, which would somehow support reconsideration. Thus, Kahn's third argument fails to support reconsideration.

Turning to Kahn's fourth and last reason for severance, he argues it is mandated by *Bruton v. United States*, 381 U.S. 123 (1968). MTR at 11-13. The crux of his argument is a recorded and transcribed telephone conversation between Chaudry and Chaudry's wife, while Chaudry was in jail. *Id.* at 12. In this conversation, Chaudry implicates someone named Sheila Wu in the check cashing operation. *Id.* In it he also uses the term "we" three times and the name "Ali," but never actually implicates Khan. *See* MTS at 14. The Court already ruled this conversation was not grounds for severance.[9] Nonetheless, Kahn now argues since the Court ruled, he has learned the government "intends to introduce substantial amounts of evidence implicating Sheila Wu as co-conspirator of Chaudry." MTR at 12. Kahn argues this creates a risk the jury will find Kahn guilty by association with Chaudry and Wu. *Id.* Because it was already known the transcript implicates Wu, and because the Court already ruled the transcript does not merit severance, Kahn has failed to show any new facts which would suggest to any degree that the Court should reconsider its prior decision.[10] Thus, the MTR is DENIED.

### III.    Kahn's Motion in Limine to Exclude Alleged Co-Conspirators' Statements (the "2d MIL") [Docket Nol. 75]

The Court DENIES in part and DENIES without prejudice in part Kahn's 2d MIL which

---

[9]    There is only a minute order from November 3, 2004, so it is unclear whether this ruling was predicated on redaction or not, but regardless, the government has indicated if it wishes to use the transcript, it would change "we" to "I," and redact any reference to Kahn, Docket No. 35 at 10 (Consolidated Response by Plaintiff USA).

[10]    Further, to the extent Wu establishes culpability in connection with any check cashing, Kahn, who cashed checks, cannot complain of guilt by mere "association," though he might suffer guilt by direct evidence of culpable conduct or culpable conspiratorial conduct.

1   addresses co-conspirator statements introduced under Federal Rule of Evidence 801(d)(2)(E).

2   Under this rule, a statement is not hearsay if it "is offered against a party and is ... a statement by a

3   coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid.

4   801(d)(2)(E).  "The contents of the statement shall be considered but are not alone sufficient to

5   establish ... the existence of the conspiracy and the participation therein of the declarant and the

6   party against whom the statement is offered under subdivision (E)."  *Id.*  As the Supreme Court held

7   in *Bourjaily v. U.S.*, 483 U.S. 171, 175 (1987), in order to admit a co-conspirator's statement under

8   Rule 801(d)(2)(E), a court must find by a preponderance of the evidence that (1) there was a

9   conspiracy (2) involving the declarant and the nonoffering party, and (3) the statement was made

10  "during the course and in furtherance of the conspiracy."

11          In turn, the elements of conspiracy are " 'an agreement to accomplish an illegal objective

12  coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent

13  necessary to commit that underlying, substantive offense.' "  *U.S. v. Schmidt*, 947 F.2d 362, 367 (9th

14  Cir. 1991) (quoting *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir.1980)).  "The

15  agreement need not be explicit, but may be inferred from circumstantial evidence ...."

16  *Melchor-Lopez*, 627 F.2d at 891.   " 'Inferences ... may be drawn "if there be concert of action, all

17  parties working together understandingly, with a single design for the accomplishment of a common

18  purpose.' "  *Schmidt*, 947 F.2d at 367 (quoting *Melchor-Lopez*, 627 F.2d at 890).  Moreover,

19  "[k]nowledge of the objective of the conspiracy is an essential element of any conspiracy

20  conviction."  *Schmidt*, 947 F.2d at 367 (quoting *United States v. Krasovich*, 819 F.2d 253 (9th Cir.

21  1987)).

22          Turning to Kahn's 2d MIL, in it he makes three requests.  First, he asks for a pretrial

23  evidentiary hearing to determine whether alleged co-conspirator statements should be excluded

24  under Rule 801(d)(2)(E).  Second, he alternatively asks the Court to exclude any such statements

25  from being introduced at trial.  And third, he asks the Court to exclude any such statements if made

26  after arrest.  For the following reasons, the Court DENIES his first request, but DENIES without

27  prejudice his second and third requests.

28          **A.      Kahn has failed to show any grounds for a pre-trial hearing.**

In his 2d MIL, Kahn argues while *Bourjaily* did not mandate a pre-trial hearing, one is appropriate here, because despite "thousands of pages of discovery," there is a "dearth" of evidence he was part of a conspiracy.[11] 2d MIL at 5:17-22. Thus, he argues a pre-trial hearing would avoid introducing "extrajudicial" statements at trial or frequent interruptions caused by his evidentiary objections. *Id.* at 5:22-27. Kahn provides no legal support or standard for when a pre-trial hearing might be appropriate.

In opposition, the government attacks Kahn's factual and legal conclusions. Factually, the government argues quite simply the evidence will show Kahn, as Chaudry's employee, participated in cashing over 150 checks, for less than $10,000, at currency exchanges, where the cashers had agreed "with the defendants" not to file CTRs, and Kahn himself filed false CTRs. 2d MIL Opp'n at 2:9-15. Also, the government claims it will present evidence of the illegal software business, and that Kahn delivered the software. *Id.* at 2:19-3:4. And, the government claims witnesses will testify to the pervasiveness and obviousness of Chaudhry's illegal conduct, and Kahn's multifaceted participation in it. *Id.* at 3:6-8.

Legally, the government argues a court need not hold a hearing, as "the trial judge may admit the challenged statements conditionally, subject to a later motion to strike if the prosecution fails to establish the required foundation." *U.S. v. Watkins*, 600 F.2d 201, 204 (9th Cir. 1979), *cert. denied*, 444 U.S. 871 (1979).[12] 2d MIL Opp'n at 3:27-4:5. It also argues such a hearing would unnecessarily lengthen the proceedings. *Id.* at 3:2-3. In this case, the government argues, there is ample proof to connect Kahn to a conspiracy to structure transactions to avoid reporting

---

[11]     Kahn cites *U.S. v. Tamez*, 941 F.2d 770, 775 (9th Cir. 1991) as supporting this statement. 2d MIL at 5:17-19. *Tamez* merely held *Bourjaily* does not require a pre-trial hearing, but did not address a situation with "dearth" of evidence regarding a conspiracy, despite a substantial amount of discovery.

[12]     The government also cites *United States v. Medina*, 761 F.2d 12, 17 (1st Cir. 1985) for the principal pre-trial hearings are generally unnecessary. 2d MIL Opp'n at 3:1-4. While the First Circuit did so hold, the Court is reluctant to adopt out-of-circuit law in this area, due to differences in how the Circuits address this issue. *Compare U.S. v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (pre-trial hearings are strongly preferred in the 10th Circuit), *cert. denied*, 525 U.S. 883 (1998) *with U.S. v. Perez*, 658 F.2d 654, 657 n.2 (9th Cir. 1981) ("Unlike the Fifth Circuit, this court has declined to express a 'preference' for pretrial determination of admissibility of the coconspirator's statements." (citing *United States v. James*, 576 F.2d 1121 (5th Cir. 1978), *modified en banc*, 590 F.2d 575 (5th Cir. 1979), *cert. denied*, 442 U.S. 917 (1979))).

1    requirements and to the illegal software business, and thus no need for a pre-trial hearing.  *Id.* at 3:9-

2    20.

3              In reply, Kahn first addresses the government's factual contentions.  First, he argues the

4    government has only produced evidence that he filed CTRs at Chaudry's direction, but not by

5    himself.  2d MIL Reply at 1:27-2:2.  Further, he argues it was his job to cash checks, which is a legal

6    act.  *Id.* at 2:2-5.  Also, he argues there is no evidence to suggest he was anything other than a low-

7    level employee following instructions.  *Id.* at 2:6-8.  And, he argues although the government has

8    failed to identify which employees sold software illegally, it has not identified him as one of them.

9    *Id.* at 2:16-20.  Lastly, he argues the government has not produced any evidence he participated in

10   delivering any software.  *Id.* at 2:21-22.  Kahn then makes the legal argument, that as there is "a total

11   lack of evidence connecting [him] to any conspiracy[,]" the Court must hold a pre-trial hearing to

12   filter out inadmissible and unduly prejudicial statements.[13]  *Id.* at 3:16-22.

13             The Court, having considered both parties' arguments, rules there is no need for a pre-trial

14   hearing.  Kahn has requested, though he did not call it as such, a *James* hearing, named after *United*

15   *States v. James*, 576 F.2d 1121 (5th Cir. 1978), *modified en banc*, 590 F.2d 575 (5th Cir. 1979), *cert.*

16   *denied*, 442 U.S. 917 (1979).  In considering whether these should be mandatory, the Ninth Circuit

17   has held, "This court has held repeatedly that the order of proof is within the sound discretion of the

18   trial court.  The procedure of conditionally admitting co-conspirator's statements subject to later

19   motions to strike is well within the court's discretion." *U.S. v. Zemek*, 634 F.2d 1159, 1169 & n.13

20   (9th Cir. 1980) (citation omitted); also see *U.S. v. Tamez*, 941 F.2d 770, 775 (9th Cir. 1991)

21   (*Bourjaily* does not require a pre-trial hearing).

22             As a factual matter, the Court holds were the government to produce the evidence it claims to

23   have, there would be a preponderance of proof that Kahn conspired to avoid transaction reporting

24   requirements and conspired to sell stolen or mis-classified software.  With regards to the former,

25   quite simply, were the government to show Kahn filled out CTRs, and thus knew about the $10,000

26   reporting requirement, but also cashed 150 checks for under this amount, not at a bank, but at

27   ───────────────

28   [13]      Kahn also makes a confusing comment regarding *Medina*, *see* 2d MIL Reply at 3:23-4:6,
     which is irrelevant here, as the Court is not considering that case.

currency exchanges,[14] the Court holds he more likely than not conspired to avoid the CTR regulations.  While it is reasonable for him to assert some persons might view the evidence as showing he was a low-level employee just cashing checks, the Court could and does hold by a preponderance, he conspired to evade CTR regulations.

With regards to the illegal software sales, the government says witnesses will testify that Kahn had a multi-faceted role in this conduct which was open and notorious.  Thus, if the government shows Kahn knew of the conduct, and was actively involved in it, then the Court holds he more likely than not conspired to illegally sell software.  As for Kahn's argument that no evidence shows he "sold" software, he need not do this to conspire in its sale.  As for his argument the government has produced no evidence he delivered any software, the government has said Kahn "participated" in its delivery, not that he actually "delivered" it.[15]  Thus, in consideration of the foregoing, the Court DENIES Kahn's request for a pre-trial hearing.

**B.    If the government produces the evidence it claims it will produce, then the Court need not exclude co-conspirator statements as hearsay.**

The Court DENIES Kahn's request to exclude hearsay produced at trial.  Kahn notes the government initially charged Mohammed Chaudry, Kahn, Sheila Wu, Radu Tomescu, Leng Kouch, and Adnana Torlak for offenses including trafficking counterfeit software, structuring transactions, subscribing false returns, conspiracy, *et seq.*  2d MIL at 6:12-16.  Most of these defendants have been tried, save for Chaudry and Kahn.  *Id.* at 6:18-20.  Kahn argues the government will seek to use statements from these people, as well as a person named Clarence Walker, at trial, under Rule 801(d)(2)(E).  *Id.* at 6:21-22.  Kahn argues the government will be unable to do this, as it will be unable to prove he agreed to participate in or knew of a conspiracy.  *Id.* at 6:24-26.  As such, he argues the Court should exclude these persons' statements as hearsay, as they cannot qualify under

---

[14]    The government says the evidence will show the exchanges agreed not to file CTRs.  It's unclear, however, why they would have to agree to do this for checks under $10,000, unless they agreed to ignore the frequency of sub-$10,000 checks.  Regardless, the Court's holding does not turn on whether or not the currency exchanges were involved, as the evidence is ample without proof of their involvement.

[15]    The Court notes, however, the government has not defined what "participated" means.

25

Rule 810(d)(2)(E).  As already discussed in part III.A *supra*, if the government produces the evidence it says it will, the Court could and should hold by a preponderance that Kahn conspired to avoid the CTR regulations and to sell stolen software.  These persons' statements would thus be admissible under Rule 801(d)(2)(E).  Thus, based on the government's representations regarding this evidence, the Court DENIES Kahn's request to exclude it.

> **C.    Kahn has the burden to show when his conspiracies terminated, and he has failed to show they did when Chaudry was in jail and spoke with his wife by phone.**

The Court DENIES without prejudice Kahn's third request in his 2d MIL.  In his 2d MIL, Kahn argues statements made after an arrest or after a conspiracy ceases to exist are inadmissible under Rule 801(d)(2)(E), under *U.S. v. Smith*, 623 F.2d 627, 631 (9th Cir. 1980).  2d MIL at 7:16-18.  Kahn then argues "the vast majority" of statements produced by the government were made after the termination of any alleged conspiracy, "many" after defendants were arrested.  *Id.* at 7:19-21.  As such, he argues, they are not admissible under Rule 801(d)(2)(E).  2d MIL at 7:21-22.  Lastly, Kahn argues the transcript of the telephone call between Chaudry and Chaudry's wife, while Chaudry was in jail, is either inadmissible under Rule 801(d)(2)(E) because any alleged conspiracy had ended or because it was not made in furtherance of any such conspiracy.  2d MIL at 8:3-5.

In opposition, the government argues *Smith* did not hold an arrest terminates a conspiracy, but only affirmed the general proposition that statements made after the termination of a conspiracy are inadmissible as co-conspirator statements.  2d MIL Opp'n at 5:2-4.  It also argues, in *United States v. Sanchez-Rosales*, 216 F.3d 1085 (9th Cir. 2000) (unpublished), the Ninth Circuit held a co-conspirator's post-arrest statement to an undercover agent was admissible against a co-conspirator when the statement was in furtherance of the conspiracy.  2d MIL Opp'n at 5:5-7.  And, it cites *Hawkins v. Bunnell*, 16 Fed. Appx. 656, 658 (9th Cir. 2001), another unpublished decision, for the principle that co-conspirator statements which conceal or impede an investigation are made in furtherance of a conspiracy and therefore admissible against co-conspirators.  2d MIL Opp'n at 5:7-10.

The Court first notes *Smith* did not hold as the parties claim.  *Smith* merely held a co-

conspirator who becomes an informant ceases to function as a co-conspirator, but as long as two or more co-conspirators still exist, the conspiracy exists, and statements between the informant and these remaining co-conspirators are admissible under Rule 801(d)(2)(E). *Smith*, 623 F.2d at 631. Further, the Court notes *United States v. Sanchez-Rosales*, dealt with *pre-arrest* statements to an undercover agent, not *post-arrest* statements. And lastly, the Court notes under Ninth Circuit Rule 36-3(a) the *unpublished* decisions cited by the government are not precedential, and under Rule 36-3(c), they are not citable in this Circuit.

Nonetheless, all but one of the legal principles the parties espouse are universally accepted. Thus, once a conspiracy terminates, there can be no co-conspirator admissions. *U.S. v. Day*, 789 F.2d 1217, 1220-21 (6th Cir. 1986) (statements made to IRS agent inadmissible under Rule 810(d)(2)(E) as tax returns at issue had been filed, a criminal investigation had been begun, and the conspiracy long since ended); *U.S. v. Posner*, 764 F.2d 1535, 1538 (11th Cir. 1985) (letter disclosing conspiracy is not co-conspirator admission). But Kahn is wrong to assert a conspiracy terminates with arrest. *U.S. v. Madrigal*, 152 F.3d 777, 780-81 (8th Cir. 1998) (telephone conversation between jailed and non-jailed conspirators admissible); *U.S. v. Zarnes*, 33 F.3d 1454 (7th Cir. 1994) (same, and holding arrest *may* constitute withdrawal from a conspiracy, but not as a matter of law). Although they often terminate when their end or objective is achieved, sometimes they continue beyond this stage, when further acts are taken to conceal their success. *Grunewald v. U.S.*, 353 U.S. 391, 404-05 (1957). Whether an statement related to an act of concealment qualifies as an act furtherance of a conspiracy will turn on the facts and circumstances of a given case. *Id.* Lastly, the party claiming a conspiracy has ended bears the burden of proof on this issue. *U.S. v. Local 560 (I.B.T.)*, 974 F.2d 315, 338 (3d Cir. 1992) (once government shows by preponderance conspiracy exists, it is presumed to continue until defendant proves otherwise).

Turning to Kahn's legal conclusions, as already discussed in part III.A *supra*, the government can show by a preponderance that Kahn was involved in a conspiracy to avoid CTR requirements and to sell illegally purchased software. Kahn then has the burden to show when the conspiracy ended, if he wishes to bar the admission of co-conspirator statements under Rule 801(d)(2)(E). Here, he has failed to do this. All he has done is make vague allegations that

1  many statements the government will seek to introduce were made after a conspiracy terminated or

2  after arrest.  Without specific evidentiary facts to consider, the Court is unable determine when any

3  alleged conspiracies terminated.  Nor has he presented any evidence to allow the Court to determine

4  whether Chaudry's phone call to his wife, which the government has never indicated it would use as

5  evidence, is or is not admissible under any rule of evidence.  Thus, the Court DENIES without

6  prejudice Kahn's request until trial.

7  **IV.     The government's Motions in Limine (the "Gov MIL") [Docket No. 77]**

8           For the following reasons, the Court GRANTS it MIL *as unopposed*.[16]  The Court's Standing

9  Order for Pretrial Preparation states, "The failure of the opposing party to file a memorandum of

10  points and authorities in opposition to any motion shall constitute a consent to the granting of the

11  motion."  Defendants did not file an opposition to the government's MIL.  The Court thus GRANTS

12  it.

13  **V.      Chaudry's Motions in Limine (the "CMIL") [Docket No. 102]**

14          Chaudry brings ten motions in limine on which the Court rules as follows.

15  **A.      Chaudry's First MIL:  Failure to File Taxes in Years Other than those Charged**

16  **in the Indictment.**

17          Like Kahn, Chaudry seeks to exclude evidence of his failure to file taxes in years other than

18  those involved in the indictment, under Rules 404(b) and 403.  *See* CMIL at 3:4-26.  Like Kahn, he

19  provides no specific evidence for the Court to consider.  *See id.*  Thus, for the reasons stated in

20  part I.A *supra*, the Court DENIES without prejudice Chaudry's first MIL.

21  **B.      Chaudry's Second MIL:  IRS Agent Janet Appelton's Audit and Chaudry's Tax**

22  **Deficiencies in Years Other than those Charged in the Indictment**

23          Like Kahn, Chaudry seeks to exclude evidence of the Appelton audit and his tax deficiencies

24  for years other than those involved in the indictment, under Rules 404(b) and 403.  *See* CMIL

25  at 4:4-22.  Like Kahn, he provides no specific evidence for the Court to consider.  *See id.*  Thus, for

26  the reasons stated in part I.B *supra*, the Court DENIES his request with regards to excluding

27

28  _____

[16]     Defendants did not file oppositions to these requests.

28

1    evidence of Appelton's audit, but DENIES without prejudice his request to exclude evidence of

2    Chaudry's tax deficiencies in years other than those charged in the indictment.

3          **C.     Chaudry's Third MIL:  Appelton's Testimony that She Discovered a Theft Ring**

4          The Court GRANTS this MIL.  Chaudry seeks to exclude testimony by IRS agent Janet

5    Appelton, under Rules 402 and 403, as irrelevant and substantially prejudicial, that she believed she

6    had discovered a computer theft ring when she audited Mr. Chaudhry, a statement that gave in a

7    government interview.  CMIL at 4:25-5:2.  In reply, the government says it will not introduce this

8    evidence, unless Chaudry "opens the door" by introducing evidence of his "good character" or by

9    attempting to explain certain actions as an effort to assist underprivileged groups or charities.  Gov.

10   Opp'n at 5:5-11.   Thus, the Court GRANTS this MIL.

11         **D.     Chaudry's Fourth Mil:  Chaudry's Charitable and Political Activities**

12         The Court GRANTS this MIL.  Chaudry seeks to exclude evidence of his charitable and

13   political activities in Pakistan.  CMIL at 5:6-16.  In reply, the government says it will not introduce

14   this evidence, unless Chaudry "opens the door" by introducing evidence of his "good character" or

15   by attempting to explain certain actions as an effort to assist underprivileged groups or charities.

16   Gov. Opp'n at 5:5-11.   Thus, the Court GRANTS this MIL.

17         **E.     Chaudry's Fifth MIL:  Uncharged Conduct**

18         Chaudry seeks to exclude evidence of a number of uncharged areas of conduct.  The Court

19   rules on each request as follows.

20         **1.     The Illegal Software Business**

21         The Court DENIES Chaudry's request to exclude evidence of the illegal software business

22   for lack of foundation, DENIES his request to exclude it as covered by the November 30, 2004

23   suppression Order, and DENIES his request to exclude it under Rule 404(b), but DENIES without

24   prejudice his request to exclude it under Rule 403.  Chaudry argues evidence regarding his "gray

25   market" software business is without foundation, is covered by the Court's suppression Order dated

26   November 30, 2004, or inadmissible under Rules 404(b) or 403.  CMIL at 5:26-6:15. Chaudry fails

27   to explain how the evidence lacks foundation.  *See id.*  Thus, the Court DENIES this request.

28         As for the Court's suppression Order, the Court notes after the government arrested Chaudry

at his business, agents made a "protective sweep" which included a warehouse containing illegally obtained software, then had a warrant issued to seize this evidence. Memo fr. Hur to Armstrong dated Nov. 24, 2004 (the "Memo") at 1-2. Chaudry moved to suppress any evidence obtained under this warrant, the government did not oppose, and the Court granted the motion. *See* Mem. at 5; Docket 39 (Min. Order). Chaudry, however, in his Fifth MIL fails to state what evidence the government is using against him, in violation of this Order. *See* CMIL at 6:9-13. Further, the parties need not request other parties to obey the Court's orders. The Court expects the parties to obey them without additional motions. Thus, the Court DENIES this request.

Lastly, as for Chaudry's Rule 404(b) and 403 arguments, the Court already addressed these issues in part I.C *supra*. Thus, for the reasons state therein, the Court DENIES his request to exclude evidence of the illegal software business under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule 403.

### 2. The Amount of Chaudry's Tax Deficiencies for Years Charged in the Indictment

The Court DENIES this request. Chaudry claims this evidence is irrelevant and prejudicial "as set forth above," but fails to indicate where "above" is. See CMIL at 6:17-19. Nonetheless, the government did oppose on the grounds this evidence was inextricably intertwined with his conduct to structure transactions to avoid CTR requirements and to file false returns, and was admissible under Rule 404(b) as tending to show his motive, planning, intent, and absence of mistake or accident in performing these acts. Gov. Opp'n at 12:4-18. The government also argues this evidence would not "shock the jury," under Rule 403, and thus its prejudicial value does not substantially outweigh its probative value to the jury. *Id.* at 12:20-25. The government is correct. Thus, the Court DENIES Chaudry's request.

### 3. Checks Cashed Other than those Charged in the Indictment

Chaudry reserves his objections regarding these checks until the government produces them. There is no request before the Court upon which to act.

### 4. Chaudry's Compliance Review by Clarence Walker

The Court DENIES this request. Chaudry says he has no objection to the introduction of

1   official documents related to this  review, assuming they are properly authenticated.  CMIL

2   at 6:26-28.  He does object, however, to testimony from anyone other than Walker, who sought to

3   explain Walker's statements in these documents.  *Id.* at 6:28-7:2.  Chaudry does not explain or

4   support his objection, thus the Court DENIES his request.

5          Although not required, the Court notes the government says the compliance file compiled by

6   "corrupt" Revenue Agent Walker contains multiple documents of various types.  Gov. Opp'n

7   at 14:12-13. Many of them are standard forms that are business or public records under Federal

8   Rules of Evidence 803(6) and 803(8).  *Id.* at 14:13-14.  As such, it argues, they are admissible under

9   these hearsay exceptions.  *Id.* at 14:14-15.

10          Further, it argues, to the extent the notations on these documents reflect common practices of

11   IRS revenue agents, not unique to Walker, the government anticipates another revenue agent could

12   explain these common concepts and practices to the jury.  *Id.* at 14:16-18. Because defendants have

13   not identified specific documents they seek to exclude, the government argues it is unable to provide

14   a particularized response to this portion of Chaudry's MIL.  *Id.* at 14:18-20.

15          **5.    Defendants' Dealings with Customers Other than Those Dealings**

16                 **Charged in the Indictment**

17          Chaudry seeks to exclude evidence of defendants' dealings with customers other than that

18   charged in the indictment, apparently under Rules 404(b) and 403.  CMIL at 7:5-18.  The Court

19   already addressed this issue in Kahn's MIL.  *See* part I.B.3 *supra*.  For the reasons stated in

20   part I.B.3, the Court DENIES Chaudry's request to exclude evidence of defendants' uncharged

21   conduct involving customers, under Rule 404(b), but DENIES without prejudice his request to

22   exclude it under Rule 403.

23          **6.    The Activity of Chaudry's Bank Accounts During Periods Other than the**

24                 **Period of Time Implicated in the Indictment**

25          The Court DENIES Chaudry's request to exclude this evidence under Rules 404(b) or 403.

26   Chaudry argues he would not object to the introduction of properly authenticated business records

27   containing information about his business bank accounts, if limited to the tax years in the

28   indictment.  CMIL at 7:21-23.  The government argues this evidence, which shows Chaudry

31

1  switched from using banks to currency exchanges, is inextricably intertwined with his structuring

2  business transactions to avoid CTR requirements, and with his illegal software business. Gov.

3  Opp'n at 15:27-16:14. It also argues it is admissible under Rule 404(b) as tending to show his

4  motive, intent, plan, and absence of mistake or accident. *Id.* at 16:16-22. Lastly, it argues the

5  probative value is clearly not outweighed by any prejudicial effect. *Id.* at 16:24-28. The Court

6  holds this evidence admissible under both Rules 404(b) and 403, and DENIES Chaudry's request.[17]

7         **7.  Defendants' participation in completing CTRs**

8        Chaudry does not object to the introduction of properly authenticated official CTRs, but

9  reserves objection as to other evidence the government may propose concerning defendants'

10  "participation" in their preparation. There is no request before the Court to address.

11         **8.  Testimony regarding the "overall relationship" between Sheila Wu, Radu**

12               **Tomescu, and defendants**

13        The Court DENIES this request. Chaudry says he does not object to relevant live testimony

14  by Wu or Tomescu, but objects to third parties testifying about the "overall relationship" between

15  Wu, Tomescu and defendants. CMIL at 8:4-7. He argues, this testimony would be likely prejudicial

16  and misleading, and fail to provide an opportunity for appropriate confrontation and cross-

17  examination. *Id.* at 8:7-10. He specifically objects to testimony from Leng Kouch and Adnan

18  Torlak, former "WWS" employees, as if it were relevant, it would be cumulative with Wu's and

19  Tomescu's. *Id.* at 8:10-15. And, he objects to testimony that he was in a conspiracy with Wu and

20  Tomescu. *Id.* at 8:15-17. Chaudry does not explain what any of this means or provide any legal

21  authority for his request. In response, the government made clear these witnesses would testify to

22  specific events or conduct they perceived which would tend to show defendants' conduct implicated

23  in the indictment. Gov. Opp'n at 18-19. Thus, the Court DENIES it.

24         **9.  Defendants' Dealings with Check Cashers Other than Those Charged in**

25

26  [17]    Other evidence of uncharged conduct disputed in the motions in limine, such as cashed

27  checks, where the parties have not indicated the time period involved or the numbers of items of
evidence, have required the Court to reserve judgment as to admissibility under Rule 403. Here,

28  however, if this evidence shows Chaudry switched from banking to currency exchanges, then it
would be timely, and thus the Court need not wait to rule on its admissibility under Rule 403.

1    **the Indictment**

2        Chaudry seeks to exclude evidence of defendants' dealings with check cashers other than

3    those charged in the indictment, apparently under Rules 404(b) and 403.  CMIL at 8:20-27.  The

4    Court already addressed this issue in Kahn's MIL.  *See* part I.B.2 *supra*.  For the reasons stated in

5    part I.B.2, the Court DENIES Chaudry's request to exclude this evidence under Rule 404(b), but

6    DENIES without prejudice his request to exclude it under Rule 403.

7    **F.    Chaudry's 6th MIL:  Irrelevant and/or Cumulative Testimony of Government**

8    **Witnesses**

9        The Court DENIES in part, and DENIES as moot in part, this MIL.  Chaudry says the

10   government lists four witnesses who will testify about their "conversations and interactions with"

11   him:  Alex Tennis, Mohammed Saleem, Mohammed Nasim, and Jaswant Sra.  He claims, none bear

12   specifically on any of the transactions alleged in the indictment.  Thus, he argues testimony from all

13   four should be excluded as irrelevant.  The Court holds Chaudry has failed to provide sufficient

14   information for the Court to determine relevancy or redundancy.  Nonetheless, the government

15   indicates each witness had conversations with Chaudry, which were not redundant.  Gov. Opp'n

16   at 20:27-21:5.  Further, it says Tennis supplied software to RT and AES.  *Id.* at 21:6-8.  And, the

17   other three will only be called if defendants try to use Walker in their defense, to testify regarding

18   defendants' relationship with Walker.  *Id.* at 21:8-14.  As such, the Court DENIES this MIL, with

19   regards to Tennis.  And, with regards to Saleem, Nasim, and Sra, who will not be used in the

20   government's case-in-chief, the Court DENIES this MIL as moot.

21   **G.    Chaudry's 7th MIL:  Expert and Summary Testimony of Charles Tonna and the**

22   **Use of Summary Charts**

23       The Court DENIES without prejudice this MIL.  Chaudry says the government has advised it

24   intends to offer both summary and expert testimony by IRS agent Charles Tonna.  CMIL at 9:11-14.

25   He objects to any summary testimony that purports to summarize the testimony of other witnesses.

26   *Id.* at 9:14-16.

27       Chaudry also believes the government will also have Tonna explain summary charts

28   detailing payments to RT and AES, during tax years charged in the indictment.  *Id.* at 9:17-19.  He

1    has not seen them and reserves objection.  *Id.* at 9:20-21.  He also requests the Court order the

2    originals of any documents referred to in such charts be produced in Court, under Federal Rule of

3    Evidence 1006.[18]  *Id.* at 9:21-23.

4         Lastly, Chaudry says the government proposes to admit Tonna's testimony regarding the true

5    amount of gross receipts accrued by RT and AES, and the amount of tax deficiency in the tax years

6    charged.  *Id.* at 10:4-7.  He reserves objection pending the government's disclosure of the documents

7    and schedules that will be relied on by Mr. Tonna in making such calculations.  *Id.* at 10:7-9.

8         The Court DENIES without prejudice this MIL, as it is unclear whether or not, since this

9    motion was made back in August 2007, the government has provided the summary evidence and

10   underlying documents to defendants.  Further, until this and other disclosure occurs, there is no real

11   request or issue before the Court to address.  As for Chaudry's Rule 1006 request and his other

12   requests, the Court ORDERS the government to provide the materials to defendants' counsels'

13   offices, rather than to the Court.

14   **H.    Chaudry's 8th MIL:  Richard Adams' Testimony**

15        The Court DENIES this MIL.  Chaudry has two objections regarding Adams.  First, he

16   claims the government intends to call IRS Agent Richard Adams as a summary witness regarding

17   documents, and thus his testimony is likely to be cumulative.  *Id.* at 10:11-14.  Second, he argues the

18   government intends to call Adams as an expert on how criminals structure transactions to avoid CTR

19   requirements.  *Id.* at 10:16-19.  He argues the jury such testimony will allow the jury to improperly

20   infer he belonged to such a network, and knew structuring was illegal, which the Ninth Circuit held

21   to be prejudicial error, in *United States v. Pineda-Torres*, 287 F.3d 860 (9th Cir. 2002).  *Id.*

22   at 10:19-27.

23        The government responds to the first issue by noting while Tonna will testify regarding

24

25   _____

     [18]    This rule states:

26            The contents of voluminous writings, recordings, or photographs which
           cannot conveniently be examined in court may be presented in the form of a chart,
27         summary, or calculation.  The originals, or duplicates, shall be made available for
           examination or copying, or both, by other parties at reasonable time and place.  The
28         court may order that they be produced in court.

     Fed. R. Evid. 1006.

1    accounting and tax issues, Adams will testify regarding illegal structure schemes, and thus there is

2    no redundancy.  Gov. Opp'n at 21:18-21.

3          Second, it notes in *Pineda-Torres*, the problem was the defendant, a permanent resident of

4    Southern California, was arrested at the San Ysidro border station with 43 pounds of marijuana

5    hidden behind the glove compartment of a car he did not own.  *Pineda-Torres*, 287 F.3d at 862.  He

6    was not charged with conspiracy.  *Id.* at 861-62.  The only issue at trial was whether he knew the

7    drugs were in the car.  *Id.* at 863.  Over defendant's in limine motion, the court allowed the

8    government to present an expert on drug trafficking organizations to establish that fingerprinting

9    drug packages is useless as the drivers have no role in loading or unloading the vehicles.  *Id.* at 862-

10    63.  At trial, the expert testified how drug trafficking organizations are compartmentalized into

11    growers, storers, packagers, drivers, sellers, *et seq.  Id.* at 863.  An agent also testified they use

12    packaging materials which make it difficult to lift prints, and any obtained would probably be from

13    Latin America.  *Id.*  In its closing, the "government contended that, because Pineda-Torres was part

14    of a 'sophisticated drug organization,' he must have known that drugs were in the car."  *Id.*

15    Understandably, the Ninth Circuit reversed his conviction due to prejudicial error.  *Id.* at 866.

16          The government argues there is no such problem here as defendants are charged with

17    conspiracy, and Adam testimony will exactly describe their conduct, which was not the case in

18    *Pineda-Torres*.  Gov. Opp'n at 22:26-23:7.  The government has responded to Chaudry's objections,

19    so the Court DENIES his eighth MIL.

20          **I.     Chaudry's 9th Mil:  *Giglio*, Impeachment, and *Henthorn* Materials**

21          The Court DENIES this MIL as moot.  Chaudry claims the government has said it would

22    disclose redacted copies of the presentence reports and proffer agreements of its witnesses, under

23    *Giglio v. United States*, 405 U.S. 150 (1972), pursuant to the Court's order.  CMIL at 11:13-16.

24    Thus, he requests an order directing the immediate disclosure of impeachment material in these

25    documents, as well as any other material tending to impeach the government's witnesses, if it has

26    not already been disclosed.  *Id.* at 11:16-12:1.  Impeachment material contained in IRS audits or files

27    concerning government witness Edwin Lin are specifically requested - as is such information for any

28    other check-casher witness testifying for the government.  *Id.* at 12:1-4.

1    Chaudry also requests the Court order the government, under *United States v. Henthorn*, 931

2    F.2d 29, 31 (9th Cir. 1990), to review the files of its testifying agents for any such material discussed

3    above. CMIL at 12:4-8.

4    In response, the government says it made a motion with the Court to disclose the Presentence

5    Investigation Reports (PSRs) of its cooperating witnesses. Gov. Opp'n at 23. The Court requested

6    it obtain consent from those witnesses to disclose their PSRs. *Id.* It then spoke with counsel for

7    each of the cooperating witnesses, and they had no objection, provided the PSRs were subject to a

8    protective order to only be used in these proceedings. *Id.* The government now requests the Court

9    grant its motion and permit it to turn over the PSRs for its cooperating witnesses to the defense in

10   this matter, subject to an appropriate protective order. *Id.* **The Court ORDERS the government**

11   **to prepare a protective order.**

12   Further, The government says it has disclosed the plea agreements for each of its cooperating

13   witnesses. *Id.* It says it has disclosed Judgment and Conviction documents for witnesses Leng

14   Kouch, Radu Tomescu, and Adnan Torlak. Id. at 23-24. The United States has not disclosed the

15   Judgement and Conviction document for Wu as it remains sealed. *Id.* at 24. The government thus

16   requests the Court order it be unsealed for the limited purpose of providing it to the defense in this

17   case, subject to the protective order that it be used only in connection with this matter. *Id.* **The**

18   **Court ORDERS the government to prepare a protective order.**

19   Also, the government says it has disclosed the IRS' Title 31 Compliance File regarding

20   Edwin Lin. *Id.* The government believes it has complied with its obligations to disclose

21   impeachment material for this witness; however, if other materials come to its attention, it will

22   disclose them as soon as practicable. *Id.* Lastly, it says it has requested a review of each testifying

23   federal law enforcement agent's personnel file for material subject to disclosure under *Henthorn* and

24   *Brady*. *Id.* If any such material is found, it says it will disclose it to the defense or raise any relevant

25   issues with the Court. *Id.* Based on the government's acknowledgment of its duties, the Court

26   DENIES this MIL as moot.

27   **J.      Chaudry's 10th MIL:  Jencks Act Disclosures**

28   The Court DENIES this MIL. Chaudry asks for an order directing the government to

1    disclose any Jencks Act, 18 U.S.C. 3500, statements, including grand jury transcripts, immediately,

2    and for an order precluding the introduction as evidence of any material not disclosed by the time of

3    the pretrial conference.  CMIL at 12:11-22.  The government argues this request is contrary to §

4    3500(b) and would prevent it from developing its case in response to defendants' production at trial.

5    Gov. Opp'n at 24:23-25:2.  Section 3500(a) (emphasis added) states:

6            In any criminal prosecution brought by the United States, no statement or

7        report in the possession of the United States which was made by a Government

8        witness or prospective Government witness (other than the defendant) shall be the

9        subject of subpena, discovery, or inspection *until said witness has testified on direct*

10       *examination* in the trial of the case.

11       And, section 3500(b) (emphasis added) states, in part:

12           *After* a witness called by the United States has testified on direct examination,

13       the court shall, on motion of the defendant, order the United States to produce any

14       statement (as hereinafter defined) of the witness in the possession of the United States

15       which relates to the subject matter as to which the witness has testified.

16       The Court notes both paragraphs clearly provide for production *after* a government  witness

17   has testified.  Thus, the Court DENIES Chaudry's tenth MIL.

18   **VI.    Chaudry's Motion for a Jury Questionnaire [Docket No. 107]**

19       Chaudry requests the Court use a 16-plus page questionnaire to achieve a fair trial under the

20   Sixth Amendment and Federal Rule of Criminal Procedure 24, by enabling a more thorough voir

21   dire.  Neither Kahn nor the government has filed any pleading regarding this questionnaire.  The

22   Court DENIES this request as an inefficient method of voir dire.

23   **VII.   Kahn's Joinder in Defendant Chaudhry's Motion In Limine (Docket No. 102) [Docket**

24       **No. 108];**

25       The Court rule on this as it did on the CMIL [Docket No. 102].  *See* part V *supra*.

26   **VIII.  The government's Motion in Limine to Exclude Public Authority Defense [Docket**

27       **No. 110];**

28       The Court GRANTS this MIL.  Federal Rule of Criminal Procedure 12.3(a)(1) states:

If a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time provided for filing a pretrial motion, or at any later time the court sets.

In its MIL, the government argues defendants will assert the public authority defense, but having failed to provide the notice required by rule 12.3(a)(1), they may not. In response, defendants do not oppose the government's MIL. They note they will argue when they sought advice from IRS agent Walker, he told them how to file CTRs and perform other business activities. They will thus argue they did not know they were violating the law by their activities. The government has alleged Walker was supposed to investigate defendants, but instead advised them how to hide their criminal acts. Defendants note Walker was already convicted for his conduct, in this Court. Regardless, defendants do not oppose the MIL and do not intend to assert they acted on behalf of law enforcement. Thus, the Court GRANTS the MIL.

## IX.    The Government's Motion in Limine Regarding Witness Janet Appleton (the "GMIL2") [Docket No. 111]

The Court DENIES without prejudice this MIL. According to the parties, IRS agent Janet Appelton has been sued by the Milpitas Community Church in *Milpitas Community Church v. Janet Appleton*, Santa Clara Superior Court No. 106CV069856. Docket No. 112 at 1 (Chaudry's Mem. in Opp'n to the GMIL2 (the "COpp'n")). Defendants claim in a declaration by the Chairman of the Church Board of Trustees filed in support of a request for a restraining order, the church declared Appleton had, among other things, (1) sent letters to people representing herself as a trustee of the church when she was not; (2) "use[d] letterhead that she has made purporting to be from the Church Body"; (3) "crippled the Church financially by preventing regular deposits to be made"; (4) removed Church financial documents and wiped financial records from the Church computers. *Id.* at 1-2.

Neither party alleges Appelton has been convicted of any crime.[19] The parties do not

---

[19]    The government does mention "the embezzlement charges were dropped," but does not elaborate. GMIL2 at 3:21-23.

38

indicate whether this suit arises from Appelton's professional conduct, personal conduct, or both or neither.

The government seeks to bar defendants from exceeding the boundaries set by Federal Rules of Evidence 608.[20]

Rule 608 states, in part:

> *(a) Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> *(b) Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608.

The government agrees defendants may ask Appelton about specific instances of conduct, but argues, under *United States v. Cluck*, 544 F.2d 195 (5th Cir. 1976), they are stuck with her answer, and may not produce extrinsic evidence in the form of civil trial or other documents to impeach her. GMIL2 at 2. The government also argues defendants are barred from calling church witnesses or others to testify regarding specific instances of conduct, to impeach Appelton. *Id.*

---

[20]    The government also seeks to bar defendants from impeaching Appelton under Federal Rule of Evidence 609, GMIL2 at 3, but as this Rule only allows impeachment with *convictions*, it is clearly not at issue here, nor have defendants indicated they would seek to use this Rule.

In opposition, Chaudry argues he should be allowed to use extrinsic evidence to impeach Appelton, under Federal Rule of Evidence 607. COpp'n at 3. He basis his argument on Federal Rule of Evidence 607 and *United States v. Castillo*, 181 F.3d 1129 (9th Cir. 1999). Rule 607 states, "Who May Impeach. The credibility of a witness may be attacked by any party, including the party calling the witness." Fed. R. Evid. 607. As for *Castillo*, Chaudry argues it allows for "impeachment by contradiction." COpp'n at 3.

In *Castillo*, the defendant tried to smuggle 80 kg of marijuana in a Jeep through the Calexico border crossing, but when the vehicle was stopped and searched, he ran back into Mexico. Castillo, 181 F.3d at 1131. About a month later, he was arrested trying to smuggle in 23 kg of marijuana in a Lincoln. *Id.* At trial, the court ruled a conviction for cocaine possession from a few days prior to the Jeep crossing, was inadmissible, but allow in a 1995 marijuana conviction as evidence of smuggling knowledge. *Id.* at 1132. On the stand, Castillo repeatedly in response and not in response to questions claimed he "worked with disadvantaged children, and would not have smuggled drugs 'for a million dollars.' Castillo portrayed himself as an anti-drug counselor who taught kids to 'stay away from drugs.' He added that he had never used drugs and would not touch them." *Id.* As a result, the court admitted extrinsic evidence proving the cocaine conviction, as going to his credibility. *Id.*

On appeal, the Ninth Circuit affirmed. *Id.* at 1131. The court noted, "Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity. In contrast, the concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence[.]" *Id.* at 1132. The Court then held:

> [D]irect-examination testimony containing a broad disclaimer of misconduct
> sometimes can open the door for extrinsic evidence to contradict even though the
> contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is,
> thus, collateral. This approach has been justified on the grounds that the witness
> should not be permitted to engage in perjury, mislead the trier of fact, and then shield
> himself from impeachment by asserting the collateral-fact doctrine.

1    *Id.* at 1132-33 (quoting 2A Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure*, §

2    6119 at 116-17 (1993)).

3         It then held:

4         Impeachment by contradiction is properly considered under Rule 607, not

5    Rule 608(b).  [4 Joseph M. McLaughlin, *Weinstein's Federal Evidence*] § 607.06, at

6    607-72-607-84.  The Second Circuit has noted that, "Rule 607 appears to allow the

7    continuation of federal practice in admitting extrinsic evidence to impeach specific

8    errors or falsehoods in a witness' direct testimony, subject to Rule 403

9    considerations."  *United States v. Benedetto*, 571 F.2d 1246, 1250 n. 7 (2d Cir.1978).

10   Weinstein also suggests that courts should analyze such evidence under Rule 403.

11   Weinstein § 607.06 [3][b], at 607-79; § 608.12[6][a], at 608-42.

12   *Castillo*, 181 F.3d at 1133.

13        The Court notes *Castillo* has two predicates for using Rule 607 impeachment by

14   contradiction:  (1) the witness must state the alleged falsehoods on direct examination; and (2) he or

15   she must make a relatively broad disclaimer of misconduct.  In ruling on this MIL, the Court must

16   not allow defendants to use Rule 607, a general rule addressing impeachment, to swallow up

17   Rule 608, a specific rule addressing *veracity* impeachment.  With this in mind, the Court DENIES

18   without prejudice the government's MIL, for now, and will address this issue should it arise on

19   Appelton's direct testimony at trial.

20   **X.    Chaudry's Supplemental Motion in Limine (the "SMIL") [Docket No. 114]**

21        The Court should rule as follows on Chaudry's 14 supplemental motions in limine, which he

22   filed *four days prior* to the September 11, 2007 PTC.

23        **A.    1st SMIL:  Dealings with Customers Other than those Charged in the**

24        **Indictment**

25        The government added another customer to its witness list.  SMIL at ¶ 1.  The Court already

26   ruled on this issue in part I.B.3. *supra*.  For the same reasons there stated, the Court DENIES

27   Chaudry's request to exclude this evidence under Rule 404(b), but DENIES without prejudice his

28   request to exclude it under Rule 403.

**B.    2d SMIL:  Dealings with Check Cashers Other than those Charged in the Indictment**

The Court should DENY this MIL.  Chaudry claims the government has added an IRS agent to its witness list to testify regarding documents found at Money Market Financial Services, a business where none of the charged transactions took place.  SMIL ¶ 2.  Chaudry argues this testimony and documents should be excluded, *id.*, but fails to explain why.

**C.    3d SMIL:  Trash Found at Walker's House.**

The Court DENIES this MIL.  Chaudry says the government has identified two witnesses on this topic, which Chaudry finds irrelevant and cumulative.  *Id.* ¶ 3.  The government claims the evidence shows Walker and Chaudry had a relationship which went beyond that of an IRS agent performing a compliance investigation.  Docket No. 120 at 2 ¶ 3 (gov.'s Mem. in Opp'n (the "SOpp'n")).

**D.    4th SMIL:  Walker's Database Searches**

The Court DENIES this MIL.  Chaudry claims the government has identified two agents who will testify about database searches purportedly requested by Walker.  SMIL ¶ 4.  He argues there is no evidence Chaudry requested them or Walker did them on his behalf.  *Id.*  Thus, he argues, this testimony should be excluded as irrelevant.  *Id.*  Alternatively, he argues, even were it probative, it should be limited to the percipient witnesses who conducted the searches.  *Id.*  The government argues this evidence will show Chaudry knew Walker was advising how to break the law, not comply with it.  SOpp'n at 2 ¶ 4.  The evidence appears relevant, and Chaudry fails to explain the percipience argument.  The Court should DENY this MIL.

**E.    5th SMIL:  Testimony by Government Agents Who Investigated Defendant**

Chaudry argues agents should not testify regarding what witnesses told them, but those witnesses should testify instead.  SMIL ¶ 5.  Without more information, the Court DENIES this MIL.

**F.    6th SMIL:  FBI Surveillance of RT**

Chaudry argues this evidence is irrelevant, misleading, and confusing.  SMIL ¶ 6.  The government argues it goes to his defense he was running a currency exchange.  SOpp'n at 3 ¶ 6.

1    The Court DENIES this MIL.

2        **G.    7th SMIL:  IRS Agent Tobin's Testimony**

3        Chaudry does not know to what she will testify but thinks it is cumulative with agents'

4    Tonna's and Adam's testimony.  SMIL ¶ 7.  The government says this agent will discuss how CTRs

5    are processed.  SOpp'n at 3 ¶ 7.  The Court DENIES this MIL.

6        **H.    8th SMIL:  IRS Detroit Computing Center Representative Timothy**

7        Chaudry does not know to what he will testify and reserves objections.  SMIL  ¶ 8.

8        **I.    9th SMIL:  California Representative Regarding the Licensing of Check**

9                **Cashing Businesses**

10        Chaudry argues he is not charged with conducting an unlicensed check cashing businesses

11    and this proposed testimony should be excluded as irrelevant, confusing, time consuming, and

12    prejudicial.  SMIL ¶ 9.  The government argues this evidence goes to his defense he was running a

13    lawful currency exchange.  SOpp'n 3 ¶ 9.  The Court DENIES this MIL.

14        **J.    10th SMIL:  Agents' Testimony regarding Chaudry's Statements**

15        The Court DENIES this MIL.  Chaudry says he has not reviewed all the disclosed witness

16    statements, but believes Agent Langert would only testify he called Chaudry from a customer's

17    business to ask if Chaudry had delivered software to that business earlier that day, and Chaudry said

18    "I don't know."  SMIL ¶ 10.  The Court DENIES this MIL, as "I don't know" is a relevant

19    statement.[21]

20        **K.    11th SMIL:  Bankers' Testimony regarding Chaudry's Banking**

21        Chaudry does not know what testimony will be provided but believes it irrelevant, but

22    reserves objections.  SMIL ¶ 11.

23        **L.    12th SMIL:  Robert Overby's Statements**

24        Chaudry says this transient who sometimes left his things at RT or helped out for a few

25    dollars does not have relevant testimony.  SMIL ¶ 12.  The government argues he will refute

26    Chaudry's claims regarding his software and check cashing businesses.  SOpp'n at 3 ¶ 12.  The

27    _____

28    [21]    The Court also cautions the parties not to file MILs before they have completely reviewed discovery.

1    Court DENIES this MIL.

2         **M.    13th SMIL:  Confidential Informants**

3         The Court DENIES ths MIL.  Chaudry request the identities of witnesses "Source" and "T-

4    1" interviewed by government agents, as no witnesses in the government's lists are identified as

5    confidential informants.  SMIL ¶ 13.  He also requests, under the Jencks Act, 18 U.S.C. § 3500, that

6    the government be ordered to disclose which of its named witnesses, if any, gave statements

7    attributed to a confidential informant in discovery.[22]  *Id.*  The government argues he has made none

8    of the showings necessary to reveal the identity of a confidential informant.  *See Roviaro v. United*

9    *States*, 353 U.S. 53, 60-61 (1957); *United States v. Williams*, 898 F.2d. 1400, 1402 (9th Cir. 1990)

10   (holding the government has a privilege, qualified only by the fundamental requirements of fairness

11   to the accused, to withhold the identity of an informant in order to protect the informant and

12   encourage citizens to assist in law enforcement by providing information).  SOpp'n at 4 ¶ 13.

13        More specifically, the Court notes, is Williams held "[t]he defendant bears the burden of

14   demonstrating the need for disclosure, and a mere suspicion that the information will prove helpful

15   will not suffice."  *Id.* at 1402 (citation omitted).  As such, the court held, "[t]he government has a

16   limited privilege to withhold the identity of a confidential informant.  That privilege must give way

17   where the disclosure of the identity or contents of a communication 'is relevant and helpful to the

18   defense of an accused, or is essential to a fair determination of a cause.' "  *Id.* (citations omitted;

19   quoting *Rovario*, 353 U.S. at 60-61).  As Chaudry has not made a sufficient showing of need, the

20   Court DENIES this MIL.

21        **N.    14th MIL:  Testimony of a Conspiracy between Wu, Tomescu, and Walker**

22        Thus, the Court DENIES this MIL.  Chaudry seeks to exclude testimony allegedly about a

23   conspiracy between Sheila Wu, Radu Tomescu, and Clarence Walker, and to exclude testimony

24   about Walker's bad conduct while an IRS agent.  SMIL at 6:6-9.  Chaudry claims Walker was

25   convicted in this Court of taking bribes from Wu and Tomescu, who ran a business together, and

26   because he helped them file false CTRs.  *Id.* at 6:10-16.  Wu testified at Walker's trial that Walker

27   _____

28   [22]    I'm not sure this makes sense.  This act only provides the government must produce a
     testifying witnesses' statements, after they have testified.

was paid to monitor IRS activity, and used his influence with currency exchanges to allow them to cash checks over $10,000. *Id.* at 6:20-25. She also testified she met Walker through Chaudry. *Id.* at 6:26. Chaudry argues all of this is irrelevant, as is evidence Walker was terminated. *Id.* at 7:7-11. He also argues all of this and testimony about it is barred under Rule 404(b) and 403 and as hearsay. *Id.* at 7:11-21.

The government notes witnesses will testify Wu and Tomescu did business with Chaudry and engaged in other activities with him. SOpp'n at 4 ¶ 14; Opp'n at 18-19.

The Court notes Chaudry will apparently argue Walker advised him how to run a currency exchange, but the evidence Chaudry has presented would allow a jury to infer Walker was advising businesses how to avoid CTR requirements, and that Chaudry even "hooked up" Wu and Tomescu with Walker, in order to do this. Thus, all this evidence is relevant. As for Chaudry's Rule 404(b) argument, he fails to indicate how it applies to "other acts" by third parties. As for his hearsay argument, he fails to indicate how this applies to testimony about other people's conduct, as opposed to statements. Nor has he provided enough information for the Court to outright bar any testimony as hearsay. That is, he has not made the requisite showing. Thus, the Court DENIES this MIL.

## XI.    Kahn's Joinder in Defendant Chaudhry's Additional Motions in Limine (Docket No. 114) [Docket No. 116]

The Court rules on this Joinder as it did for Docket No. 114, the SMIL, *see* part X *infra*.

## CONCLUSION

Accordingly, with regards to:

(1)    Kahn's MIL [Docket No. 73], the DENIES as follow:

(a)    The Court DENIES without prejudice as to whether evidence of Chaudry's failure to file tax returns or his tax deficiencies is admissible under Rules 404(b) or 403;

(b)    The Court DENIES as to whether evidence of the Appelton audit is admissible under Rules 404(b) or 403;

(c)    The Court DENIES Kahn's request to exclude evidence of defendants' uncharged conduct involving check cashers, customers, or cashed checks under Rule 404(b), but

45

1    DENIES without prejudice his request to exclude it under Rule 403.

2              (d)    The Court DENIES Kahn's request to exclude evidence of the illegal software

3    business under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule 403.

4         (2)    Kahn's Motion in Limine for Reconsideration of Defendant Khan's Motion for

5    Severance [Docket No. 74], the Court DENIES it;

6         (3)    Kahn's Motion in Limine to Exclude Alleged Co-conspirators' Statements [Docket

7    Nol. 75], the Court:

8              (a)    DENIES Kahn's request for a *James* hearing;

9              (b)    DENIES his request to determine whether statements introduced at trial are

10    co-conspirator admission under Federal Rule of Evidence 801(d)(2)(E); **but,**

11             (c)    DENIES without prejudice his request to determine whether Chaudry's phone

12    call from jail to his wife, is a co-conspirator admission under Federal Rule of

13    Evidence 801(d)(2)(E);

14        (4)    The government's *unopposed* Motions in Limine (the "Gov MIL") [Docket No. 77],

15    the Court GRANTS as follows:

16             (a)    With regards to barring defendants' from introducing their own out-of-court

17    statements made while engaged in the illegal software business or the check-cashing scheme to

18    avoid CTR requirements, as:

19                     (i)    party admissions under Federal Rule of Evidence 801(d)(2)(A), the

20    Court GRANTS this request;

21                     (ii)    prior consistent statements under Federal Rule of

22    Evidence 801(d)(1)(B), the Court GRANTS this request;

23                     (iii)    under the completeness doctrine of Federal Rule of Evidence 106, if

24    inadmissible, the Court GRANTS this request;

25             (b)    The Court GRANTS the government's request to preclude defendants from

26    mentioning alleged racial, ethnic, or religious bias;

27             (c)    The Court GRANTS the government's request to preclude defendants from

28    mentioning punishment;

1    (d)    The Court GRANTS the government's request to preclude defendants from

2    introducing evidence of their "good character," under Federal Rule of Evidence 405(b);

3    (5)    Chaudry's Motions in Limine (the "CMIL") [Docket No. 102], the Court rules as

4    follows:

5    (a)    On his first MIL, regarding excluding his failure to file taxes in years other

6    than those charged in the indictment, the Court DENIES without prejudice;

7    (b)    On his second MIL, regarding excluding IRS agent Janet Appelton's audit,

8    the Court DENIES, but with regards to excluding his tax deficiencies in years other than those

9    charged in the indictment, the Court DENIES without prejudice;

10    (c)    On his third MIL, regarding excluding Appelton's testimony that she

11    discovered a theft ring, the Court GRANTS it;

12    (d)    On his fourth MIL, regarding excluding his charitable and political activities,

13    the Court GRANTS it;

14    (e)    On his fifth MIL, regarding excluding certain uncharged conduct, the Court

15    rules as follows:

16    (i)    Regarding excluding evidence of the illegal software business, the

17    Court DENIES his request to exclude evidence of it for lack of foundation, DENIES his request to

18    exclude it as covered by the November 30, 2004 suppression Order, and DENIES his request to

19    exclude it under Rule 404(b), but DENIES without prejudice his request to exclude it under

20    Rule 403;

21    (ii)    Regarding checks cashed other than those charged in the indictment,

22    he reserves his objections;

23    (iii)    Regarding excluding evidence of his compliance review by Clarence

24    Walker, the Court DENIES it;

25    (iv)    Regarding excluding evidence of defendants' dealings with customers

26    other than those dealings charged in the indictment, the Court DENIES his request to exclude this

27    evidence under Rule 404(b), but DENIES without prejudice on his request to exclude it under

28    Rule 403;

47

1    (v)    Regarding excluding evidence of the activity of his bank accounts
2    during periods other than the period of time implicated in the indictment, the Court DENIES it;

3    (vi)    Regarding excluding evidence of the activity of defendants'
4    participation in completing CTRs, he reserves objections;

5    (vii)    Regarding excluding evidence testimony regarding the "overall
6    relationship" between Sheila Wu, Radu Tomescu, and defendants, the Court DENIES it;

7    (viii)    Regarding excluding evidence of defendants' dealings with check
8    cashers other than those charged in the indictment, the Court DENIES his request to exclude this
9    evidence under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule
10    403;

11    (f)    On his sixth MIL, regarding excluding irrelevant and/or cumulative testimony
12    of government witnesses, the Court DENIES it without prejudice;

13    (g)    On his seventh MIL, regarding excluding expert and summary testimony of
14    Charles Tonna and the use of summary charts, the Court DENIES it without prejudice, but the
15    government is ORDERED to produce the documents defendants have requested;

16    (h)    On his eighth MIL, regarding excluding Richard Adams' testimony, the Court
17    DENIES it;

18    (i)    On his ninth MIL, regarding *Giglio*, impeachment, and *Henthorn* materials,
19    the Court DENIES as moot; but, the government is ORDERED to prepare protective orders for
20    presentence investigation reports and for Wu's judgment and conviction documents;

21    (j)    On his tenth MIL, regarding excluding any Jencks Act Disclosures made after
22    the PTC, the Court DENIES it;

23    (6)    Chaudry's Motion for a Jury Questionnaire [Docket No. 107], the Court DENIES it;

24    (7)    Kahn's Joinder in Defendant Chaudhry's Motion In Limine (Docket No. 102)
25    [Docket No. 108], the Court rules as it did on Docket No. 102;

26    (8)    The government's Motion in Limine to Exclude Public Authority Defense [Docket
27    No. 110], the Court GRANTS it;

28    (9)    The government's Motion in Limine Regarding Witness Janet Appelton [Docket

48

1   No. 111], the Court GRANTS it;

2       (10)    Chaudry's Supplemental Motion in Limine (the "SMIL") [Docket No. 114], the

3   Court rules as follows:

4       (A)    On his 1st SMIL, regarding excluding dealings with customers other than

5   those charge in the indictment, the Courts DENIES Chaudry's request to exclude this evidence

6   under Rule 404(b), but DENIES without prejudice his request to exclude it under Rule 403;

7       (B)    On his 2d SMIL, regarding excluding dealings with check cashers other than

8   those charge in the indictment, the Court DENIES it;

9       (C)    On his 3d SMIL, regarding excluding the trash found at Walker's house, the

10  Court DENIES it;

11      (D)    On his 4th SMIL, regarding excluding Walker's database searches, the Court

12  DENIES it;

13      (E)    On his 5th SMIL, regarding excluding testimony by government agents who

14  investigated defendant, the Court DENIES it;

15      (F)    On his 6th SMIL, regarding excluding FBI surveillance of RT, the Court

16  DENIES it;

17      (G)    On his 7th SMIL, regarding excluding IRS agent Tobin's testimony, the Court

18  DENIES it;

19      (H)    On his 8th SMIL, regarding excluding IRS Detroit computing center

20  representative Timothy, he has reserved objections;

21      (I)    On his 9th SMIL, regarding excluding the California representative regarding

22  the licensing of check cashing businesses, the Court DENIES it;

23      (J)    On his 10th SMIL, regarding excluding agents' testimony regarding

24  Chaudry's statements, the Court DENIES it;

25      (K)    On his 11th SMIL, regarding excluding bankers' testimony regarding

26  Chaudry's banking, he has reserved objections;

27      (L)    On his 12th SMIL, regarding excluding Robert Overby's statements, the

28  Court DENIES it;

49

1          (M)     On his 13th MIL, regarding disclosing confidential informants, the Court

2  DENIES it;

3          (N)     On his 14th SMIL, regarding excluding testimony of a conspiracy between

4  Wu, Tomescu, and Walker, the Court DENIES it; and

5      (11)    Kahn's Joinder in Defendant Chaudhry's Additional Motions in Limine (Docket

6  No. 114) [Docket No. 116], the Court rules as it did on Docket No. 114.

7

8      IT IS SO ORDERED.

9

10      May 19, 2008                        _____

                                       Saundra Brown Armstrong

11                                       United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28